UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
DOMINGO MEDINA,                                      :
                                                     :
                        Plaintiff,                   :
                                                     :          **MEMORANDUM AND ORDER**
          -against-                                  :
                                                     :             No. 10 Civ. 5922 (VMS)
POLICE OFFICER ANTHONY DONALDSON   :
and POLICE OFFICER CHARLES INGRASSIA,:
                                                     :
                        Defendants.                  :
---------------------------------------------------------- X

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff Domingo Medina ("Plaintiff" or "Mr. Medina") brought this action pursuant to

42 U.S.C. § 1983 ("Section 1983") alleging that Defendant Charles Ingrassia ("Officer

Ingrassia" or "Defendant") and Defendant Police Officer Anthony Donaldson ("Officer

Donaldson") (collectively, "Defendants") violated his Fourth and Fourteenth Amendment rights.

Mr. Medina alleged that Defendants used excessive force in his arrest and that Officer Ingrassia

unlawfully arrested and maliciously prosecuted him.  Mr. Medina also brought a malicious

prosecution claim under state common law.[1]  After a seven-day trial that was bifurcated into

liability and damages stages, the jury found that Officer Ingrassia used excessive force against

Mr. Medina after his arrest.  The jury awarded Mr. Medina $5,000 in compensatory damages and

$16,000 in punitive damages on this claim.  Jury Damages Verdict, ECF No. 80.  Defendant

Officer Ingrassia moves for judgment as a matter of law under Federal Rule of Civil Procedure

("FRCP") 50 or, in the alternative, for a new trial pursuant to FRCP 59.  Defendant also moves

to vacate the jury's award of punitive damages.  For the reasons stated below, Defendant's

motions are denied.  In addition, Plaintiff requested permission to file a cross-motion for

---

[1] See Am. Compl., ECF No. 7; Stip & Order of Partial Withdrawal, ECF No. 20 (withdrawing
claims against other Defendants named in the Amended Complaint).

judgment as a matter of law limited to the excessive force claim, specifically on a theory that Defendant failed to intervene.[2]  Plaintiff's request is denied as moot in light of the Court's determination of Defendant's motions.

## I.     BACKGROUND

The trial concerned events of July 12, 2008, when New York City Police Department ("NYPD") officers responded to a noise complaint about a block party in Brooklyn, New York. In relevant part, the jury heard the testimony of Plaintiff, who was arrested at the party; Officer Ingrassia and Sergeant Mohammed Karimzada ("Sergeant Karimzada"), partners who arrested Plaintiff; Officer Donaldson, who transported Plaintiff to the 75th Precinct; Edgar Roberts ("Mr. Roberts"), the superintendent of the buildings outside of which the party was held and the father of the party's host; and Victor Joseph ("Mr. Joseph"), who attended the party and is Mr. Medina's brother-in-law.  See Tr. ("Tr. 1"), ECF No. 70 (containing the testimony of Officer Donaldson); Tr. ("Tr. 2"), ECF No. 64 (containing the testimony of Officer Ingrassia, Mr. Roberts and Sergeant Karimzada); Tr. ("Tr. 3"), ECF No. 72 (containing the testimony of Mr. Roberts, Mr. Medina and Mr. Joseph); see also Tr. ("Tr. 4"), ECF No. 71 (containing Mr. Medina's testimony for the damages stage of the trial).[3]

According to Officer Ingrassia and Sergeant Karimzada, they handcuffed Mr. Medina after he pushed Sergeant Karimzada, causing the sergeant to suffer a cut to his knee.  They further testified that Mr. Medina resisted arrest.  See Tr. 2 41:6-52:1; 132:21-146:2.  In contrast, Plaintiff and Mr. Roberts testified that Mr. Medina did not push Sergeant Karimzada, and that

---

[2] Plaintiff explicitly limited his request to cross-move to a failure-to-intervene theory of excessive force.  Pl. Letter 1 at 1.  Neither party raised any issue post-trial concerning the unlawful arrest or malicious prosecution claims, so this Court will not address those claims in this memorandum and order.

[3] The jury also heard the testimony of Denzil Haynes ("Mr. Haynes"), who stated that he was the owner of the speakers used at the party.  Tr. 2 177:14-194:21.

the officers pushed Mr. Medina to the ground, then punched and kicked him while handcuffing him. <u>See</u> Tr. 2 208:23-211:21; Tr. 3 99:2-106:4. It is undisputed that around the time of Mr. Medina's arrest, a bottle or bottles were thrown at the police officers from the nearby crowd. <u>See, e.g.</u>, Tr. 2 42:19-25, 211:22-212:7; Tr. 3 50:18-51:4, 102:19-25. Concerning these claims, the jury found that there was no unlawful arrest and no excessive force used during the arrest. Verdict Sheet at I, ECF No. 59; Qualified Immunity Special Interrogatories ("Sp. Interrogs.") Nos. 1-3, ECF No. 60.

Defendant's motion involves events occurring between the time Mr. Medina was handcuffed and when he was transported by police to the 75th Precinct. Concerning these events, the jury found that Officer Ingrassia intentionally or recklessly subjected Mr. Medina to excessive force, in violation of Section 1983. Verdict Sheet at III. Specifically, the jury found that Officer Ingrassia used excessive force at, near or in a police car by punching Mr. Medina in his right eye, causing a black eye and a laceration to Mr. Medina's eyelid. Sp. Interrogs. Nos. 4-6.

At the close of Plaintiff's case, Defendants brought a FRCP 50 motion as to all claims, <u>see</u> Minute Entry, Mar. 13, 2013; Tr. 3 218:9-15. Defendant Officer Ingrassia now renews that motion, arguing that the verdict against him should be set aside as against the weight of the evidence; he also argues that the award of punitive damages was excessive. Def. Charles Ingrassia's Post-Trial Mot. ("Def. Mem.") 2, ECF No. 62; <u>see</u> Def.'s Reply Mem. in Further Supp. ("Def. Reply Mem."), ECF No. 75. Plaintiff opposes Defendant's motions. Pl.'s Am. Mem. of Law in Opp. ("Pl. Mem."), ECF No. 73.

After Defendant's motion was briefed, Plaintiff requested permission to file a cross-motion for judgment as a matter of law concerning the excessive force claim, on the theory that

Defendant failed to intervene.  Pl. Letter ("Pl. Letter 1"), ECF No. 76.  As discussed <u>infra</u>, Defendant objected that Plaintiff failed to raise a FRCP 50 motion prior to the case being submitted to the jury.  Def. Letter ("Def. Letter 1"), ECF No. 77.  Plaintiff thereafter provided additional argument in opposition to Defendant's motion but did not reiterate his request to file a cross-motion.  Pl. Letter ("Pl. Letter 2"), ECF No. 78.  Defendant also provided additional argument in support of his motions.  Def. Letter ("Def. Letter 2"), ECF No. 79.  To the extent Plaintiff did not abandon his request to file a cross-motion, this Court addresses that request <u>infra</u>, Section II.D.

Concerning Defendant's motions under FRCP 50 and 59, the Court will now summarize the witnesses' testimony, focusing on the post-arrest events.

**A.      Mr. Medina's Trial Testimony**

Mr. Medina testified to a violent arrest, during which he was lifted off his feet and dropped to the ground, hit and/or kicked while being handcuffed, and lifted painfully off the ground by the chain of the handcuffs. Tr. 3 103:8-105:25.  According to Mr. Medina, after he was handcuffed, one officer held him, supporting and slightly carrying him, as he was escorted to a police car. <u>Id.</u> at 174:3-25.  Mr. Medina did not remember which officer escorted him to the police car. <u>Id.</u>  Before he was pushed into the police car, Mr. Medina recalled being violently pushed against the trunk of the car. <u>Id.</u> at 106:15-107:7.  Mr. Medina testified that after he was placed in the car, he lay down on his right side and "[s]ome time" passed. <u>Id.</u> at 108:18-109:10.  Two officers then opened the rear car doors, one on the right side and one on the left side. <u>Id.</u> at 109:5-112:21.  The officer on his left held Mr. Medina's legs down while the officer on his right hit him around his head, neck and back. <u>Id.</u>  The officers then closed the doors, but "a couple of seconds" later, three officers reached into the car, one each from the front, left and right, and

4

began hitting him.  Id.  The officer on his right punched Mr. Medina in his eye area, causing a cut to the area of his right eye and forehead.  Id.  Mr. Medina was "dazed" and "saw black and blue, like colors," from the blow.  Id. at 113:7-16.  Mr. Medina heard his brother-in-law, Mr. Joseph, say from outside the police car, "I see that, I see that.  Why are you doing that to him?" and the beating stopped.  Id. at 109:5-112:21.  During this last encounter, Mr. Medina admittedly kicked out a car window.  Id. at 109:5-112:21.

Mr. Medina also testified that he did not interact with Officer Donaldson until he was at the police precinct.  Tr. 3 185:24-186:3.  Throughout his testimony, he did not identify by name or by sight the individual officers who attacked him in the back of the police car.

### B.    Mr. Roberts's Trial Testimony

Mr. Roberts, who prior to the block party had never seen Mr. Medina, testified that a police officer grabbed Mr. Medina by the shoulder, then Mr. Medina "went to the floor."  Tr. 2 208:23-211:21; Tr. 3 22:20-23:3.  He saw officers punching and kicking Mr. Medina while he was on the ground being handcuffed, then he saw an officer pull him off the ground by his handcuffs.  Tr. 2 208:23-211:21.

After observing Mr. Medina's arrest, Mr. Roberts observed Mr. Medina being led to the police car.  Tr. 3 50:51-21.  He stopped following Mr. Medina, and he told the crowd not to throw bottles.  Id.; Tr. 2 213:25-214:6.  He then observed Mr. Medina in the police car and saw that one of the car windows was smashed.  Tr. 3 50:51-21.  At that time, he was about fifteen to twenty feet away from the car.  Tr. 2 213:17-20.  He observed one officer outside of the car, kicking into the car, one officer in the front of the car punching Mr. Medina, and one officer on the other side of the car, punching Mr. Medina.  Tr. 2 214:1-17.  He did not see the punches land on Mr. Medina, but he saw the "action of punches."  Tr. 3 50:12-51:21.

### C. Mr. Joseph's Trial Testimony

Mr. Joseph observed Mr. Medina lying on the ground being hit by police officers; Mr. Medina appeared to be "partially unconscious, like he was going in and out of consciousness." Tr. 3 128:11-129:17. Mr. Joseph then saw Mr. Medina being "dragged" to a police car. Id.

Mr. Joseph also testified to seeing officers hitting Mr. Medina in the police car. Id. at 129:14-130:14. Mr. Joseph observed two officers in the back of the car and one in the front of the car. Id. at 132:12-25. Mr. Joseph was about one-and-a-half car lengths from Mr. Medina at that time. Id. at 129:14-130:14. Mr. Joseph told three different officers (not the officers attacking Mr. Medina), "I see what you all are doing to him" and/or "I'm standing right here watching you guys," and they replied "it wasn't us" and/or "we are not the ones doing it." Id. at 130:20-131:7, 132:12-25. After Mr. Joseph spoke up, the officers attacking Mr. Medina stopped. Id. at 131:9-17; 132:12-25. Mr. Joseph believed that Mr. Medina "was going in and out of consciousness," and he saw Mr. Medina kick out a car window. Id. at 132:12-25. Mr. Joseph moved within "three, four footsteps" of the car to see how badly Mr. Medina was injured, and Mr. Medina was then driven away. Id. at 132:12-133:14.

### D. Officer Ingrassia's Trial Testimony

Officer Ingrassia testified that when Sergeant Karimzada was unplugging the speakers, Mr. Medina pushed Sergeant Karimzada to the ground, causing a cut to Sergeant Karimzada's knee; Mr. Medina also swung at Sergeant Karimzada, and they wrestled in front of the speakers. Tr. 2 37:13-38:5, 45:9-46:9. Officer Ingrassia then lifted Mr. Medina so that his feet were off the ground, then he "got Mr. Medina to the ground." Id. at 49:2-50:7. Mr. Medina kicked Officer Ingrassia while Mr. Medina was being handcuffed on the ground. Id.

Officer Ingrassia did not recall whether he was the only person holding Mr. Medina as he walked him to Officer Donaldson's police car.  Id. at 53:23-54:5, 83:18-19.  Mr. Medina struggled and tried to pull away while being walked to the police car.  Id. at 53:13-22.  Officer Ingrassia stated that,

> At that point the situation was so irate and everything else, I had tunnel vision.  I could not hear.  You could see and smell stuff, but you couldn't – I couldn't hear what was going on, which [sic] I'm struggling with Mr. Medina moments before and attempting to put him in a – put him in a police car and get him to a safe environment before he enticed [sic] a riot with a bunch of drunk people from a party, that had been drinking alcohol and doing drugs.

Id. at 101:8-21.

Officer Ingrassia put Mr. Medina in the car and closed the door behind him.  Id. at 83:22-25.  He did not recall from which side of the car Mr. Medina entered.  Id. at 54:23-25.  Officer Ingrassia denied hitting Mr. Medina in the police car, and he denied seeing anyone hit Mr. Medina.  Id. at 54:14-17.  Officer Ingrassia testified that he and Sergeant Karimzada stayed in the area of the police car for approximately five minutes before Mr. Medina was driven to the precinct.  Id. at 54:6-13.  He stayed close to the vehicle because "somebody has to watch the person, the prisoner, at that point so that they can't escape or somebody else can't open the door and let them out," and this was Officer Ingrassia's responsibility.  Id. at 84:7-12.  He testified that during this time, he observed Mr. Medina hit a window with his head several times until the window broke; Mr. Medina also kicked another window which did not break.  Id. at 55:8-56:20, 66:11-67:4, 84:17-85:4.  At trial, Officer Ingrassia also confirmed as accurate his Civilian Complaint Review Board ("CCRB") interview testimony that he "just let [Mr. Medina] kick out the windows," and "it was not like we were going to stop him."  Id. at  67:20-69:17.

According to Officer Ingrassia, after he put Mr. Medina in the police car and closed the door, neither he nor anyone else opened the car door or touched Mr. Medina, including before and after Mr. Medina broke the car window.  Id. at 55:1-22; see id. at 83:22-25.  Sergeant Karimzada then ordered Officer Donaldson to take Mr. Medina back to the precinct, and Officer Ingrassia went to voucher the speakers.  Id. at 84:13-16, 85:5-21.

## E.    Sergeant Karimzada's Trial Testimony

Sergeant Karimzada testified that as he was unplugging the speakers, Mr. Medina pushed him to the ground, causing him to suffer a cut to his knee.  Tr. 2 132:25-138:17.  Sergeant Karimzada then stood up and saw Officer Ingrassia "trying to subdue Mr. Medina."  Id.  He saw Mr. Medina push Officer Ingrassia.  Id. at 173:11-174:13.  Sergeant Karimzada and Officer Ingrassia attempted for "[a] couple of minutes" to put Mr. Medina in handcuffs while he was standing up, then they "decided that he [was] not going to cooperate," and they "had to bring him down to the ground."  Id. at 132:25-138:17; see id. at 174:9-13 ("Officer Ingrassia got him to the ground.").  Sergeant Karimzada testified that Mr. Medina kicked Officer Ingrassia while he was on the ground, being handcuffed.  Id. at 169:2-173:5.  During the arrest, Sergeant Karimzada and Officer Ingrassia were the only officers on the scene.  Id. 162:14-16.

Sergeant Karimzada and Officer Ingrassia walked Mr. Medina to the police car, with Sergeant Karimzada walking on the left side.  Tr. 2 146:4-19.  Sergeant Karimzada could not say whether he was holding Mr. Medina along with Officer Ingrassia, but testified that "[n]ormally, we do."  Id.  After Mr. Medina was placed in the car, Sergeant Karimzada left to deal with the crowd while staying "not too far" from the police car because Mr. Medina "was acting violently in the vehicle and [Sergeant Karimzada] just wanted to make sure that he was removed from the scene as quickly as possible."  Id. at 146:25-147:17.  Sergeant Karimzada testified both that he

observed Mr. Medina "head-butting" one car window and kicking the other window with both feet, id. at 147:16-148:1, 164:10-15, and that another officer (he could not recall which officer) told him that Mr. Medina was head-butting a window, id. at 149:4-14.[4] He could not say how the window broke. Id. at 149:4-14.

Sergeant Karimzada ordered officers to "secure" Mr. Medina in the back seat, "to prevent him from causing harm to himself and damage to the police vehicle." Tr. 2 148:2-149:3, 164:24-165:2. According to Sergeant Karimzada, "[g]enerally, we place a seat belt around him, and that would restrict his movement." Id. at 164:24-165:2. Sergeant Karimzada was "in the vicinity" when "they went to take care of the conditions," but he did not see how the officer took care of Mr. Medina. Id. at 148:2-149:3. He could not recall which officers he ordered to take care of Mr. Medina, nor could he identify the "several officers [who] went to assist." Id. After Mr. Medina was secured, he was taken to the precinct. Id. at 165:3-4. Sergeant Karimzada did not see Mr. Medina again until he was at the precinct. Id. at 149:19-20. He denied ever punching or kicking Mr. Medina, or seeing anyone punch or kick Mr. Medina. Id. at 167:6-17.

### F.    Officer Donaldson's Trial Testimony

Officer Donaldson testified that when he parked his vehicle at the scene, Officer Ingrassia came walking towards him with Mr. Medina in custody. Tr. 1 8:4-9:13. According to Officer Donaldson, "[i]t just happened that I pulled up where in [sic] the direction he was walking to." Id. Officer Donaldson recalled only Officer Ingrassia, not Sergeant Karimzada, holding Mr. Medina. Id. at 11:6-12. When they were within two or three feet of one another, Officer

---

[4] Compare Tr. 2 147:16-148:1 ("Q: Did you see him acting violently in the back? A: In the back of the police vehicle? Yes, I did.") with id. at 149:4-14 ("Q: Did you know how that window came to be shattered? A: I just know that he was butt-heading [sic] the window of the vehicle. Q: And who told you that he was head-butting the window of the vehicle? A: One of the officers at the scene. Q: Officer Ingrassia? A: I don't know who exactly was the officer.").

Ingrassia asked Officer Donaldson if he could put Mr. Medina in the rear of Officer Donaldson's vehicle, because it had a safety partition.  <u>Id.</u> at 13:25-14:8.  Officer Donaldson saw only Officer Ingrassia walk Mr. Medina towards his car.  <u>Id.</u> at 17:3-14.  Officer Donaldson and his partner then walked "into the scene."  <u>Id.</u> at 17:3-14.  Officer Donaldson did not look back at his car until he returned to it five to ten minutes later.  <u>Id.</u> at 17:12-25.  He observed officers close by his vehicle, including Officer Ingrassia.  <u>Id.</u> at 18:10-23, 22:13-21.  At that time, one of the rear windows was broken.  <u>Id.</u> at 18:24-19:4.  Another officer (he does not recall which officer) told Officer Donaldson that Mr. Medina kicked the window out.  <u>Id.</u> at 19:2-7.  When he returned to his vehicle, Officer Donaldson noticed that Mr. Medina was bleeding from his right eyebrow. <u>Id.</u> at 40:9-12.  Officer Donaldson transported Mr. Medina to the 75th Precinct, and later transported him to and from the hospital.  <u>Id.</u> at 22:22-23:6.

## II.      ANALYSIS

### A.      Defendant's Motion For Judgment As A Matter Of Law

#### 1.      The Legal Standard Under FRCP 50

Under FRCP 50, judgment as a matter of law is appropriate "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . ." Fed. R. Civ. P. 50(a)(1); <u>see</u> <u>Velez v. City of New York</u>, 730 F.3d 128, 134 (2d Cir. 2013) (same).  "[A] court may set aside the verdict only 'if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it.'"  <u>Cash v. Cnty. of Erie</u>, 654 F.3d 324, 333 (2d Cir. 2011) (quoting <u>Kinneary v. City of New York</u>, 601 F.3d 151, 155 (2d Cir. 2010)); <u>see</u>

United States v. Space Hunters, Inc., 429 F.3d 416, 429 (2d Cir. 2005) (same).  Thus, judgment

as a matter of law "may be granted only if the court, viewing the evidence in the light most

favorable to the non-movant, concludes that 'a reasonable juror would have been compelled to

accept the view of the moving party.'"  Cash, 654 F.3d at 333 (emphasis in original; quoting

Zellner v. Summerlin, 494 F.3d 344, 371 (2d Cir. 2007)).

    In determining a motion pursuant to FRCP 50, "although the court should review the

record as a whole, it must disregard all evidence favorable to the moving party that the jury is not

required to believe."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000); see

Zellner, 494 F.3d at 371 ("Incontrovertible evidence relied on by the moving party . . . should be

credited by the court on such a motion if it so utterly discredits the opposing party's version [of

events] that no reasonable juror could fail to believe the version advanced by the moving

party.").  The court must bear in mind that "jurors [are] not required to accept the entirety of

either side's account, but [are] free to accept bits of testimony from several witnesses and to

make reasonable inferences from whatever testimony they credited."  Haywood v. Koehler, 78

F.3d 101, 105 (2d Cir. 1996) (finding that the jury reasonably determined that although the

defendant used excessive force, the plaintiff's injuries were caused by a separate incident

involving justifiable force); see Zellner, 494 F.3d at 371 ("[T]he jury is free to believe part and

disbelieve part of any witness's testimony.").

### 2.  Personal Involvement May Be Established Based On Circumstantial Evidence

    Central to Officer Ingrassia's motion is his contention that judgment as a matter of law is

warranted because the evidence does not support the jury's finding that he was the officer who

punched Mr. Medina.[5]  "[I]t is well settled in this Circuit that [the] personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  Provost v. City of Newburgh, 262 F.3d 146, 154 (2d Cir. 2001) (quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)).  "A police officer is personally involved in the use of excessive force if the officer either: [(a)] directly participates in an assault; or [(b)] is present during the assault, and fails to intercede on behalf of the victim even though he had a reasonable opportunity to do so."  Djangmah v. Falcione, No. 08 Civ. 4027 (PAC) (FM), 2013 WL 208914, at *8 (S.D.N.Y. Jan. 18, 2013) (quoting Vesterhalt v. City of New York, 667 F. Supp. 2d 292, 297 (S.D.N.Y. 2009)), report & recommendation adopted, No. 08 Civ. 4027 (PAC) (FM), 2013 WL 1195261 (S.D.N.Y. Mar. 25, 2013).

This does not mean that Section 1983 offers no protection to a plaintiff who cannot present to the jury eyewitness testimony or other direct evidence identifying the specific individuals involved in an alleged use of excessive force.  One of the "conventional rules" of civil litigation is that the plaintiff may prove his case based on circumstantial evidence alone. Tyler v. Bethlehem Steel Corp., 958 F.2d 1176, 1184 (2d Cir. 1992); see S.E.C. v. Warde, 151 F.3d 42, 46 (2d Cir. 1998) (denying the defendant's argument that judgment as a matter of law was warranted based on the plaintiff's reliance on circumstantial evidence); Concerned Area Residents for Env't v. Southview Farm, 34 F.3d 114, 119 (2d Cir. 1994) (vacating a judgment as

---

[5] Plaintiff argues that the jury's finding that Defendant punched Plaintiff, see Sp. Interrogs. No. 7, should be upheld if the evidence was sufficient to support either a finding of direct participation or a failure to intervene.  See Pl. Letter 2 at 4, 7.  However, Plaintiff has not objected in his motion to the special interrogatories which required the jury to specify under which theory Defendant was liable, and pursuant to which the jury specified that Defendant directly participated in the excessive force.  See Sp. Interrogs.  The Court rejects Plaintiff's suggestion that the Court may now treat the two theories as interchangeable after the jury rendered its verdict and made its specific findings on the special interrogatories.  In any event, as the Court discusses infra, Plaintiff's invocation of a failure-to-intervene theory is moot in light of the Court's decision on Defendant's motion.

a matter of law where the district court had found the jury's verdict to be "'sheer surmise and conjecture' because the plaintiffs[] offered no direct eyewitness testimony," as the district court had overlooked circumstantial evidence on which the jury was entitled to rely).[6]

Absent direct evidence, a jury may still find for the plaintiff on a theory of direct participation if "there is sufficient circumstantial evidence from which the trier of fact could make reasonable conclusions concerning who, if anyone, struck [the plaintiff]." Lasher v. City of Schenectady, No. 02 Civ. 1395, 2004 WL 1732006, at *6-7 (N.D.N.Y. Aug. 3, 2004) (although the plaintiff could not identify the non-uniformed man who allegedly punched him while he was handcuffed, a jury could reasonably infer that the defendant was that man based on circumstantial evidence involving the defendant's height and location relative to the plaintiff); see Rickett v. Orsino, No. 10 Civ. 5152 (CS) (PED), 2013 WL 1176059, at *19 (S.D.N.Y. Feb. 20, 2013) (finding sufficient circumstantial evidence of a particular defendant's personal involvement in a violation of the incarcerated plaintiff's First Amendment rights concerning the removal of a letter from a mailbox where the plaintiff saw the letter on the defendant's desk and the defendant confronted him about the letter; granting summary judgment to the defendants on other grounds), report & recommendation adopted, No. 10 Civ. 5152 (CS) (PED), 2013 WL

---

[6] See generally Djangmah, 2013 WL 208914, at *8 (denying summary judgment on an excessive force claim, despite the plaintiff's inability to identify the defendant as one of the officers who allegedly kicked him, when the defendant was alleged to have pulled the plaintiff from the police car immediately before he was kicked by several unidentified officers); De Michele v. City of New York, No. 09 Civ. 9334 (PGG), 2012 WL 4354763, at *16-17 (S.D.N.Y. Sept. 24, 2012) (where the plaintiff was facing a wall during an alleged beating and could not identify which of several officers took which actions, denying summary judgment on the excessive force claims against the defendants who were allegedly present); Shankle v. Andreone, No. 06 Civ. 487 (NG) (LB), 2009 WL 3111761, at *5 (E.D.N.Y. Sept. 25, 2009) (denying summary judgment where the plaintiff could not identify the particular officers involved in the alleged use of excessive force because the plaintiff was sprayed with mace); Jeffreys v. Rossi, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003) ("A plaintiff need not establish who, among a group of officers, directly participated in the attack and who failed to intervene"; granting summary judgment on other grounds), aff'd sub nom. Jeffreys v. City of New York, 426 F.3d 549 (2d Cir. 2005).

1155354 (S.D.N.Y. Mar. 21, 2013); <u>Campbell v. City of New York</u>, No. 06 Civ 5743 (HB), 2010

WL 2720589, at *9 (S.D.N.Y. June 30, 2010) (denying the defendants' motion for summary

judgment in relevant part where the plaintiff's only evidence of a particular defendant detective's

personal involvement was the plaintiff's testimony that this detective accompanied an officer in

transporting him to a location where the officer allegedly interrogated and assaulted the plaintiff,

because that evidence was "sufficient to allow a jury to determine whether or not [the detective]

failed to intercede . . . or was personally involved in some other fashion"); <u>Vesterhalt</u>, 667 F.

Supp. 2d at 298 (where the plaintiff could not identify which of several officers allegedly threw

her to the ground and held her down with a boot to her neck, her testimony and the undisputed

presence of the defendant officers at the scene was sufficient "to present a genuine issue of

material fact as to whether each of the individual officers was personally involved in using or

permitting the use of the alleged excessive force").  Thus, Defendant in this case overlooks the

role of circumstantial evidence when he implies that Plaintiff must provide direct evidence

identifying the particular officer or officers involved.  <u>See</u> Def. Mem. 5-7, 9; Def. Letter 1 at 1;

Def. Letter 2 at 1.[7]

### 3.    The Jury Reasonably Found That Defendant Punched Mr. Medina

The jury found that Defendant subjected Mr. Medina to excessive force by punching Mr.

Medina while he was handcuffed and sitting in the back of the police vehicle.  Defendant argues

that the Court should grant judgment as a matter of law on the excessive force claim because

Plaintiff allegedly did not establish Officer Ingrassia's personal involvement so that the verdict

---

[7] Defendant cites <u>Kornegay v. Doe</u>, 371 F. App'x 178, 179 (2d Cir. 2010) (upholding the judgment against the plaintiff where he "failed to attribute specific actions to any individual defendant"), in support of this proposition, Def. Mem. 7, but Defendant reads this brief summary order too literally.  The relevant issue here is whether the jury could attribute specific actions to a particular defendant based on the totality of the evidence presented, not whether the plaintiff himself had done so.

was against the weight of the evidence.  Def. Mem. 4-8; Def. Reply Mem. 1.  Plaintiff counters

that, based on circumstantial evidence, the jury reasonably inferred that Officer Ingrassia

punched Plaintiff.  Pl. Mem. 5-7.

As a preliminary matter, the Parties do not dispute that Plaintiff presented sufficient

evidence from which the jury could find that a police officer (not necessarily Defendant)

punched Mr. Medina, causing injury to his right eye, after he was handcuffed and placed in a

police car.  This evidence includes Mr. Medina's, Mr. Roberts's and Mr. Joseph's testimony

concerning three officers—one in the front of the vehicle[8] and one on each side—beating Mr.

Medina after he was handcuffed and placed in the vehicle.  Tr. 2 214:1-17; Tr. 3 109:5-112:21,

129:14-130:14, 132:12-25.  It also includes Mr. Medina's testimony that the final punch to his

right eye caused the laceration, Tr. 3 109:5-112:21; Officer Donaldson's testimony about seeing

Mr. Medina bleeding from the right eyebrow when Mr. Medina was in the back of the police car,

Tr. 1 40:9-12; and the medical records and photographs submitted by the Parties showing injury

to Mr. Medina's right eye.  See Pl. Tr. Exs. A-1, A-3; Def. Tr. Exs. G, M. N, O.  Thus,

notwithstanding Defendant's testimony that no one opened the car door or touched Mr. Medina

after he was initially placed in the car, see Tr. 2 55:1-22, 83:22-25, there was ample evidence

from which the jury could find that a police officer punched Mr. Medina while he was in the car,

causing the injury as he described.

In the motions presently before the Court, Defendant questions whether the jury could

reasonably conclude that Officer Ingrassia was the officer who punched Mr. Medina.  In support

of its motion, Defendant emphasizes Mr. Medina's personal inability to identify the individual

---

[8] At trial, the Parties did not elicit testimony concerning whether the safety partition in the police
vehicle had a window or other opening making it possible for a person in the front seat to reach
into the back seat.  Lacking any contrary evidence, the jury was free to infer that it was possible
for an officer in the front seat to participate in the assault.

officer who punched him, see Def. Mem. 4-9,[9] a fact that is not in dispute.  Nevertheless, direct

evidence is not required, and the jury was permitted to find for Mr. Medina if it could reasonably

infer from the circumstantial evidence that Defendant was the officer who punched him.  To do

so, the jury could pick and choose portions of the witnesses' testimony to credit.  See Haywood,

78 F.3d at 105.[10]  With these principles in mind, the Court considered the entire record in the

light most favorable to Mr. Medina.  Judgment as a matter of law must be denied because the

jury's verdict is supported by circumstantial evidence involving inconsistencies in the three

officers' testimony, Defendant's location on the scene, and allegations concerning his prior

behavior at the scene.[11]

---

[9] Defendant relies in part on the following exchange, which does not support Defendant's
argument because of an ambiguous double negative:

> Q. So you cannot say that it was Officer Ingrassia who you claim
> hit you while you were in the police car, correct? [Objection
> overruled.]
>
> A. Negative.
>
> Q. And you cannot say that it was Officer Donaldson who you
> claim hit you while you were in  the police car, correct?
>
> A. Negative.

Tr. 3 197:13-20; see Def. Mem. 6.  Regardless, the record does not contain evidence that Mr.
Medina could himself identify Officer Ingrassia as the officer who punched him in the eye.

[10] Accordingly, the jury in this case was instructed: "You may use both [direct and
circumstantial] evidence in reaching your verdict in this case.  There is no distinction between
the weight to be given to these two types of evidence."  Jury Instructions on Liability 4.  The jury
was also instructed: "[You] may have [been] asked to infer, on the basis of your reason,
experience, and common sense, from one or more proven facts, the existence of some other facts.
An inference is not a suspicion or guess. . . . You are permitted to draw, from the facts which you
find to be proven, such reasonable inferences as would be justified in light of your experience."
Id. at. 9.  The Parties have not raised any post-trial objection to these, or any other, instructions
provided to the jury.

[11] Defendant repeatedly cites Mr. Medina's statement during the damages phase of the trial that,
"having all them officers in that car, and I went to a—I went to a war, and that didn't happen to

### a. The Jury Could Infer Defendant's Involvement From Inconsistencies In His Testimony

Although not required to do so, the jury may have inferred that Defendant was involved in the use of excessive force based on particular inconsistencies in his testimony. As the Supreme Court has explained, "[p]roof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence . . . and it can be quite persuasive." Reeves, 530 U.S. at 134 (evidence undermining the credibility of an employer's stated reason for its actions may evidence the employer's discriminatory intent); see Miller-El v. Dretke, 545 U.S. 231, 241 (2005) (evidence challenging a prosecutor's stated reason for striking certain jurors was relevant circumstantial evidence of a Batson violation). In other words, "the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt." In re Dana Corp., 574 F.3d 129, 156 (2d Cir. 2009) (quoting Reeves, 530 U.S. at 147) (where the jury could conclude that the defendant testified untruthfully about not receiving certain telephone calls, the jury could infer that the defendant lied to conceal unfavorable evidence); see Zambrano-Lamhaouhi v. N.Y.C. Bd. of Educ., 866 F. Supp. 2d 147, 173 (E.D.N.Y. 2011) (same). For example, in Tatum v. Jackson, 668 F. Supp. 2d 584 (S.D.N.Y. 2009), the court denied judgment as a matter of law where, "[b]ased on the stark inconsistencies between the parties' versions of

---

me, and I come back over here to have that happen to me. And for [Officer Ingrassia] to let that happen like that, to let that go down like that, that was foul." Tr. 4 4:14-5:1; see Def Mem. 8-9; Def. Reply Mem. 1-2; see generally Tr. 3 90:3-22 (Mr. Medina was honorably discharged from the United States Army and served in Operation Enduring Freedom in Kandahar, Afghanistan). According to Defendant, this testimony shows that Plaintiff's theory of the case is that Officer Ingrassia failed to intervene, but he did not directly participate in the assault. Def. Mem. 8-9; Def. Reply Mem. 1-2. Mr. Medina's personal theory of the case, expressed to the jury after it delivered its liability verdict, has no relevance to the determination of Defendant's motions. The jury, not Mr. Medina, identified Officer Ingrassia as the individual who punched Mr. Medina. Regardless, Defendant's strained interpretation of this fragment of Plaintiff's testimony is unconvincing; Plaintiff's references to "let[ting] that happen like that" and "let[ting] that go down like that," might well refer to Officer Ingrassia's failure to control himself, not others.

the events . . . the jury could reasonably have inferred that [the defendant] was deliberately lying about the events . . . in order to cover up her misconduct." <u>Id.</u> at 593.

In this case, the jury may have found Defendant's testimony concerning what happened in the back of the police car to be unconvincing or incomplete, and it may have reasonably inferred that Defendant provided implausible or incomplete testimony to mask personal wrongdoing. It is for the jury to decide what, if any, import attaches to discrepancies between witnesses' testimony.[12]

First, the jury obviously credited some of Mr. Medina's, Mr. Roberts's and Mr. Joseph's testimony that they observed Mr. Medina being assaulted in the back of the police car.[13] Having concluded that an assault occurred, the jury may have considered the undisputed testimony that Defendant stayed close by the vehicle at all relevant times. Thus, the jury likely questioned Defendant's testimony, in so far as he testified that neither he nor any other officer punched Mr. Medina. Tr. 2 54:14-17, 97:9-16. The jury may well have inferred that if Defendant was not directly involved in the assault, he would be able to identify the officers who were involved. The jury may also have inferred that if Defendant was directly involved, it would nevertheless have been in his own self-interest to identify the officer who punched Mr. Medina and caused the most serious injury. The jury may have reasonably determined that Defendant tailored his testimony or failed to remember important details to conceal his involvement as the most serious aggressor. As previously mentioned, this is not the only inference the jury might have drawn, but it is not an unreasonable inference.

---

[12] The Court did not find Officer Ingrassia to be an unpersuasive witness, and there will almost inevitably be some inconsistencies between witnesses' recollections.

[13] Mr. Roberts did not see the punches land; rather, he saw the "action of punches," <u>see</u> Tr. 3 51:13-19, but the jury could infer that the officers were actually hitting Mr. Medina, not miming. While it is the jury's assessment of the witnesses that matters, the Court notes that it found Mr. Roberts to be a particularly credible witness.

Second, the jury may have inferred Defendant's involvement based on inconsistencies between his testimony and that of Sergeant Karimzada. See generally Alla v. Verkay, No. 11 Civ. 892 (FB) (RLM), 2013 WL 5815796, at *19 (E.D.N.Y. Oct. 30, 2013) ("[T]he jury was entitled to infer from [the officers'] conflicting and inconsistent testimony that they lied in their reports of the incident."). Sergeant Karimzada ordered officers to "secure" Mr. Medina in the back seat, and he testified that the general practice was to "place a seat belt around him" to restrict a detainee's movement and prevent any damage to the police vehicle beyond what had allegedly already occurred. Tr. 2 148:2-149:3, 164:24-165:2. Sergeant Karimzada observed officers obeying his orders by going "to take care of the conditions." Id. As Defendant was admittedly aware that Sergeant Karimzada ordered Mr. Medina transported to the precinct, Tr. 2 85:19-21, the jury may have reasonably inferred that he was also aware of the order to secure Mr. Medina. The jury may thus have discredited Defendant's testimony about no one opening the closed car door, Tr. 2 55:1-22, 83:22-25, in light of Sergeant Karimzada's testimony about both ordering officers to secure Mr. Medina and seeing officers go to do so.

Likewise, the jury may have found Defendant's testimony that "it was not like [the officers] were going to stop [Mr. Medina]" from damaging a police vehicle, see Tr. 2. 67:22-69:17, to be inaccurate based on both Sergeant Karimzada's testimony and common sense. Indeed, if Mr. Medina were acting as violently as Defendants allege, common sense would dictate that the officers would have secured Mr. Medina in order to prevent harm to police property, to Mr. Medina and/or to any officer travelling with Mr. Medina to the precinct. See Tr. 2 148:2-149:3 (Sergeant Karimzada ordered Mr. Medina to be secured "to prevent him from causing harm to himself and damage to the police vehicle."). The jury therefore could have inferred Defendant's misconduct in part from this contradicted and questionable testimony.

Moreover, no one testified that the officers followed their general practice[14] or common sense by fastening a seat belt around Mr. Medina. The jury may have considered this failure to restrain Plaintiff with a seat belt as circumstantial evidence that Plaintiff was immobilized by other, more violent, means. <u>See</u> Tr. 3 132:12-25 (Mr. Joseph testified that Plaintiff was rendered semi-conscious by the assault in the car.).

Third, the jury may have found Defendant's testimony that Plaintiff broke the car window by hitting it with his head, <u>see</u> Tr. 2 55:8-56:20, to not be credible; instead, the jury may have credited Plaintiff's and Mr. Joseph's testimony that Plaintiff broke the window by kicking it. Tr. 3 111:18-19, 132:12-25. The jury may have considered that Mr. Medina had little to gain by admitting to the destruction of police property, Tr. 3 111:18-19, and thus found his testimony more credible than Defendants' testimony. Furthermore, the jury may have found Defendant's testimony that the window broke when Plaintiff head-butted it to be contradicted by his stating at his CCRB interview that he allowed Mr. Medina to "kick out" the window; this CCRB testimony was read into the record and Defendant conceded its accuracy. Tr. 2. 67:22-69:17. Specifically, Defendant was asked, "So you just let him kick out the windows?" and he answered, "Yes. . . . [I]t was not like we were going to stop him." <u>Id.</u>

The jury may also have considered Officer Donaldson's testimony that when he returned to his car after walking into the crowd, he observed that the back window was broken and an officer told him that Mr. Medina had kicked the window out. Tr. 1 18:24-19:7. In addition, the jury may have discounted Sergeant Karimzada's testimony that he saw Mr. Medina head-butting the window, <u>see</u> Tr. 2 147:19-148:1, based on his arguably conflicting testimony that "[o]ne of

---

[14] Cf. <u>Preuss v. Kolmar Labs., Inc.</u>, No. 10 Civ. 6375 (CS), 2013 WL 4766395, at *17 (S.D.N.Y. Sept. 4, 2013) (noting in the context of an employment discrimination case that the jury may consider the defendant's failure to follow normal procedures and policies as evidence that its stated justification for its actions is pretext for an unlawful purpose).

the officers at the scene" told him that Mr. Medina was head-butting the window, <u>see</u> Tr. 149:7-14.  Finally, the jury may have questioned whether the single laceration to Plaintiff's forehead was consistent with the position that Plaintiff, a 130- to 135-pound man, <u>see</u> Tr. 3 107:1-2, broke a car window by repeatedly bashing his head against it, with his hands handcuffed behind his back.  As Defendant was near enough to the car to be in a position to know how the window broke, if the jury found that he testified inaccurately on this issue, the jury may have further inferred that he was personally motivated to explain the cut above Mr. Medina's eye as the product of Mr. Medina's violence, so as to hide his own.

### b.    The Verdict Is Supported By Evidence Concerning Defendant's Location At The Scene

The jury may reasonably have inferred that Defendant punched Mr. Medina based on evidence concerning Defendant's location at the scene.  First, having heard that Sergeant Karimzada walked on the left side when he and Officer Ingrassia escorted Plaintiff to the police car, the jury could have reasonably inferred that Officer Ingrassia walked on Plaintiff's right side, particularly because it was customary for both officers to hold a person in custody.  <u>See</u> Tr. 2 146:3-19.  As Officer Donaldson testified that he saw only Officer Ingrassia leading Mr. Medina to the car, and Officer Ingrassia recalled putting Mr. Medina in the car and closing the door, the jury may have further concluded that at some point before Mr. Medina was placed in the car, Sergeant Karimzada left to deal with the allegedly unruly crowd.  Tr. 1 11:6-12; Tr. 2 83:22-25.  Thus, circumstantial evidence shows Officer Ingrassia as the police officer nearest the car immediately before the assault.

The jury could also have inferred that Defendant was located by the right-hand police car door based on testimony concerning where the police car was parked.  In Plaintiff's Trial Exhibit 2 ("Exhibit 2"), the jury saw a photograph of the intersection of Bradford Street and Livonia

Avenue.  Pl. Tr. Ex. 2 (photograph of a two-lane street situated under an elevated subway track, with a street sign identifying the perpendicular street as "Bradford St"); Tr. 2 221:5-222:15 (Mr. Roberts's testimony that the street visible in Exhibit 2 is Livonia Avenue).  Exhibit 2, which was not taken contemporaneously with the events at issue, depicts a red car parked on the far side of Livonia Avenue.  The front of the red car faces the left side of the photograph; in other words, the red car is pointed toward Bradford Street.  According to Mr. Roberts, the police car in which Mr. Medina was placed was located "[a]cross the street" or "opposite" the red car.  Tr. 2 222:19-223:15.  It is apparent from the photograph that Livonia Avenue is a wide street with a double yellow line down the middle, indicating that traffic runs both ways.   The jury could have inferred that a car parked on the opposite side of the street from the red car would face in the opposite direction.  Therefore, the jury could infer that the trunk of the police car (not the front) would have been facing the left side of the photograph, closest to Bradford Street.[15]  The Court provides the following graphic for the reader's clarification—there is no photograph of the police car's location on July 12, 2008:



_____

[15] This configuration comports with Officer Donaldson's testimony, in that he realized there were too many people "spilled out into the street" on Bradford Street for him to safely turn onto Bradford Street.  Tr. 1 6:17-7:10.  Consistent with Mr. Roberts's testimony concerning Exhibit 2, Officer Donaldson testified that he parked on Livonia Avenue, very close to the intersection with Bradford Street.  Id.

Mr. Medina testified that after his arrest, he was escorted along Bradford Street, then turned onto Livonia Avenue, where the police car was parked. Tr. 3 106:9-25.[16] According to Officer Ingrassia, he walked Mr. Medina "down the sidewalk," not in the street. Tr. 2 82:7-11. Mr. Medina stated that just before he was "pushed inside" the police car, he was "forcefully pushed like to the back part of the car, like the trunk area," and that his "chain hit the side, like the window the way it meets going down to the trunk." Tr. 3 106:9-107:7. This testimony is consistent with the trunk of the police car being closer to Bradford Street than the front of the car. Thus, the testimony and photographic evidence suggests Mr. Medina, walking on the sidewalk of Bradford Street then Livonia Avenue, was pushed into the side of the trunk behind the rear passenger-side door, then put into the police car from the passenger-side door.[17] With the trunk of the police car facing Bradford Street, the jury could infer that Officer Ingrassia placed Mr. Medina into the police car from the right-hand side, then closed the rear right-hand door behind him.

The jury could also have reasonably inferred that an officer would have put Mr. Medina into the car from the right-hand side because that was the side adjacent to the sidewalk. Putting Mr. Medina into the car from the sidewalk would be faster than walking him to the street-side door. It also avoided the potential safety issues of walking an allegedly drunk, struggling and/or semi-conscious suspect into a street where traffic could have approached from either direction. See Tr. 2 53:13-22, 126:7-10; Tr. 3:128:23-129:3; Pl. Tr. Ex. 2. Moreover, even if Defendant

---

[16] Although Mr. Medina testified that he turned "left," Tr. 3 106:9-25, the jury may have determined he turned right, which would have been consistent with Mr. Roberts's testimony. Tr. 2 222:19-223:15.

[17] Although Mr. Joseph testified that Mr. Medina was "dragged" "around the car" and was also "dragged" "into the car," Tr. 3 129:4-17, the jury was free to understand "around" to mean "around to" or "near," rather than that Mr. Medina was made to circle the car and enter by the rear driver-side door.

had put Mr. Medina into the police car from the street-side, the jury could have reasonably inferred that Defendant would have guarded Mr. Medina from the sidewalk-side (the right-hand side), so that he would not be standing in the street and would be between Mr. Medina and the crowd, so as to address his concern that someone could "open the door and let [Mr. Medina] out." Tr. 2 84:7-12.

Concerning the assault in the car, both Mr. Medina and Mr. Roberts testified that the officers in the front and on Mr. Medina's right threw punches (the third officer kicked Mr. Medina), Tr. 2 214:1-17; Tr. 3 109:5-112:21, and Mr. Medina specifically identified the officer on his right as the one who punched him in the eye, causing the laceration. Tr. 3 109:5-112:21. Thus, although other reasonable inferences are also possible, the jury could have inferred that Defendant—the officer whom the jury could have found was walking to Mr. Medina's right, put Mr. Medina into the car from the right-hand side, closed the rear right-hand door behind Mr. Medina, and stood guard on the right-hand side of the car—was also the officer who opened the right-hand door and punched Mr. Medina in the eye.

Mr. Joseph's testimony offers further circumstantial evidence that the officer who put Mr. Medina in the car was also the officer who assaulted him on his right side. Mr. Joseph describes Mr. Medina being put into the car and the assault beginning immediately thereafter. Tr. 3 129:14-130:14.[18] The jury could reasonably believe that little or no time passed between the

_____

[18] The jury may well have favored Mr. Joseph's testimony concerning the timing of the events, without finding Mr. Medina's testimony about a pause in the attack to be untruthful. Mr. Joseph testified that after Mr. Medina was beaten during his arrest and before he entered the car, Mr. Medina appeared to be "partially unconscious, like he was going in and out of consciousness." Tr. 3:128:23-129:3. Defendants also contended (and Mr. Medina denied) that he was intoxicated. Tr. 2 126:7-10.

To the extent Plaintiff described the assault in the car as happening in two stages—unlike Mr. Joseph who does not describe a break in time, Tr. 3 129:14-130:14—only "a couple of seconds" separated the two stages described by Plaintiff and, during both, it was the officer on

police car door being closed and it being reopened to permit entry for an assault.  The jury could

have inferred that Defendant, rather than moving about the scene, remained to Mr. Medina's

right after putting him in the car based not only on the short time frame of the events, but also on

the officers' testimony that someone had to stay with Mr. Medina while he was in the car, and

Officer Ingrassia's testimony that he assumed that responsibility.  Tr. 1 18:10-23, 22:13-21

(Officer Donaldson testified that an officer had to stay with the vehicle when a suspect was in the

back, and that when he returned to his vehicle there were officers "within like an arms['] length

of the vehicle," but the only officer he could identify as being by the car was Officer Ingrassia);

Tr. 2 84:7-12 (Officer Ingrassia testified that he stayed by the vehicle because "somebody ha[d]

to watch" Mr. Medina).

The jury may also have credited Defendants' contention that Mr. Medina was acting

wildly in the back of the police car, and it may have found that when Sergeant Karimzada

ordered officers to "prevent" such behavior, Tr. 2 147:19-148:21, the officers assaulted Mr.

Medina.  Again, the jury may have inferred that Defendant, the officer to Plaintiff's right as he

was placed in the vehicle from the right-hand side, and the officer who stayed by the car to watch

the suspect, was the officer on Plaintiff's right who punched him in the eye.  If the jury credited

Defendants' contention that Plaintiff was acting violently in the police car, the jury could

reasonably infer the entire scene did not last very long, as Sergeant Karimzada ordered Officer

Donaldson to take Mr. Medina to the precinct after the car window was broken.  In any case, the

jury could have inferred that these events occurred in quick succession as Officer Ingrassia

Plaintiff's right who punched him.  Tr. 3 109:5-110:25.  Even if the jury credited Plaintiff's
testimony concerning a two-stage attack, the jury could have inferred that the officer on the right
was the same individual throughout.

testified that his goal was to "put [Mr. Medina] in a police car and get him to a safe environment before he enticed [sic] a riot . . . ."  Tr. 2 101:8-21.[19]

### c.  The Verdict Is Supported By Evidence Concerning Defendant's Actions Prior To Placing Plaintiff In The Car

The jury heard evidence from several witnesses that Mr. Medina was treated violently during and immediately after his arrest.  The jury may have reasonably inferred that Defendant, who arrested Mr. Medina with Sergeant Karimzada, was involved in all or some of these incidents, and that the incident in the back of the police car was a continuation of that behavior.  For example, Mr. Medina testified to experiencing a violent arrest where he was hit and kicked while on the ground being handcuffed, picked up off the ground by the handcuffs in a painful

---

[19] Plaintiff's counsel advances a different theory that the officer in the front of the car punched Mr. Medina in the eye.  See Pl. Mem. 4-5, 7-8; Pl. Letter 2 at 3-4.  The Court does not find this theory persuasive because it is contradicted by Plaintiff's testimony during the liability phase of the trial—which Plaintiff's counsel cites, see, e.g., Pl Letter 2 at 4—that the officer in the front "came over and lifted up my head, and the officer on the right hit me like three or four times, but it was hitting me here, but the last punch is when he hit me in the eye area, that's when I got that gash."  Tr. 3 110:18-25 (emphasis added); see Tr. 3 111:1-5 (when asked where he was pointing to during the previously quoted testimony, plaintiff stated that the officer was trying to get a "clear blow" and punched his "right eye and forehead").

Plaintiff's counsel's theory that it was the officer in the front who punched the Plaintiff is especially perplexing because Plaintiff also testified during the damages phase of the trial that it was the officer on his right who punched him.  Tr. 4 78:1-16 ("[T]he officer came from the front of the vehicle, lift[ed] up my head, [and] the officer on the right side, he hit me like three times.  The last time that he hit me, is when my eye opened up.  I felt the blood coming down.").  Likewise, during his CCRB interview, Plaintiff testified that it was the officer on his right who punched him in the eye.  See Domingo Medina CCRB Interview, Case # 200810166, Aug. 14, 2008 at 72:4-73:3, 73:22-74:22.  Obviously, the jury did not consider the former testimony on damages during the liability phase of the trial, and the jury never considered the latter CCRB testimony.  The Court mentions this testimony only to explain the Court's puzzlement with Plaintiff's counsel's argument.

Plaintiff's counsel also erroneously states that "[t]here is no testimony that any of the officers who entered through the back wore gloves," attempting to distinguish the officer in the front as the only officer wearing gloves.  Pl. Letter 2 at 5; see Pl. Mem. 4-5.  Plaintiff explicitly testified that "they were wearing like some kind of short gloves."  Tr. 3 110:18-25 (emphasis added).

manner, and later "forcefully pushed" against the trunk of the car. Tr. 3 102:2-106:25. Mr. Roberts and Mr. Joseph testified similarly concerning a violent arrest. See Tr. 2 208:23-211:21 (Mr. Roberts testified that Mr. Medina was pushed to the ground, "two officers was punching at him [sic]" during his arrest, and he was then lifted off the ground by the handcuffs); Tr. 3 128:16-129:7 (Mr. Joseph testified that officers hit Mr. Medina while he was lying on the ground, then Mr. Medina was "dragged" to the police car). The "two officers" Mr. Roberts observed "punching at" Mr. Medina during his arrest can reasonably be understood to be the two arresting officers, Officer Ingrassia and Sergeant Karimzada. Tr. 2 208:23-211:21. Officer Ingrassia also testified that he was the officer who "got Mr. Medina to the ground," admittedly lifting him so his feet were off the ground before he was dropped to the pavement. Tr. 2 49:5-13.

Although the jury did not find that Officer Ingrassia's actions during the arrest rose to the level of unconstitutional excessive force, see Sp. Interrogs. No. 1, this verdict does not mean that the jury necessarily discounted Mr. Medina's, Mr. Roberts's and Mr. Joseph's testimony that violent acts occurred during the arrest, particularly as the jury seems to have credited their testimony concerning violent post-arrest events. The jury may have concluded that the arrest occurred as the witnesses described, but that it did not involve an unconstitutionally excessive use of force. If so, the jury may have inferred that Defendant, after "punching at" Mr. Medina during his arrest, Tr. 2 210:1-14, was the individual who acted most aggressively in the police car, looking for a "clear blow" and delivering the punch that caused the most significant injury, Tr. 3 111:1-5. Although Defendant's alleged pattern of violent actions towards Mr. Medina would not be sufficient on its own to identify Defendant as the officer who punched Mr. Medina in the eye, the jury could have considered it as part of the totality of the circumstantial evidence, including the testimony about Defendant's location on the scene.

Thus, in summary, the jury could reasonably have concluded that Defendant was the officer on Plaintiff's right who punched his eye based on 1) eyewitness evidence of, and photographic evidence consistent with, an assault; 2) contradictory and incomplete testimony by the police officer witnesses from which the jury could reasonably conclude Defendant so testified in order to deny his own involvement as the aggressor who caused the most serious injury; 3) a reasonable inference that Defendant, initially standing to Plaintiff's right and being the officer who placed Plaintiff in the police vehicle through the right-hand door, was the officer who opened the door on Plaintiff's right; and 4) eyewitness testimony and Defendant's admissions concerning arguably violent actions towards Plaintiff immediately preceding the assault.

On this record, the jury could have assessed the credibility of the witnesses differently and have determined that Defendant responded reasonably and professionally to a volatile situation. However, the jury found for Plaintiff on the excessive force claim at the police car by way of Defendant's direct involvement. The jury's verdict was not "the result of sheer surmise and conjecture," nor was the evidence in Defendant's favor "so overwhelming that reasonable and fair minded persons could not arrive at a verdict against [him]." Cash, 654 F.3d at 333. Therefore, Defendant's motion for judgment as a matter of law is denied.

### B. Defendant's Motion For A New Trial

#### 1. Legal Standard For A FRCP 59 Motion

In the alternative, Defendant moves for a new trial pursuant to FRCP 59. "A motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." Snyder v. N.Y.S. Educ. Dep't, 486 F. App'x 176, 177 (2d Cir. 2012) (quoting Lightfoot v. Union Carbide

Corp., 110 F.3d 898, 911 (2d Cir. 1997)).  FRCP 59 "has a less stringent standard than Rule 50 in two significant respects: (1) a new trial under Rule 59(a) 'may be granted even if there is substantial evidence supporting the jury's verdict,' and (2) 'a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner.'" Manley v. AmBase Corp., 337 F.3d 237, 244-45 (2d Cir. 2003) (quoting DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 133–34 (2d Cir. 1998)).  However, "the court should only grant such a motion when the jury's verdict is 'egregious.'"  DLC Mgmt., 163 F.3d at 134 (quoting Dunlap-McCuller v. Riese Org., 980 F.2d 153, 158 (2d Cir. 1992)).

"[I]t is well-established that '[c]ourts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable.'"  LaFemina v. Winter Harbor Brands, Inc., No. 01 Civ. 7410 (JG), 2004 WL 2600101, at *2 (E.D.N.Y. Nov. 16, 2004) (quoting Sentilles v. Inter-Caribbean Shipping Corp., 361 U.S. 107, 110 (1959)), aff'd sub nom. Lafemina v. Bay Head, Inc., No. 04 Civ. 6523, 2005 WL 2650005 (2d Cir. Oct. 17, 2005).  In other words, "trial judges must exercise their ability to weigh credibility with caution and great restraint, as a judge should rarely disturb a jury's evaluation of a witness's credibility, and may not freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the judge disagrees with the jury."  Raedle v. Credit Agricole Indosuez, 670 F.3d 411, 418 (2d Cir. 2012) (internal quotations & citations omitted).  Thus, "[w]here the resolution of the issues depended on [an] assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial."  Id. (quoting Metromedia Co. v. Fugazy, 983 F.2d 350, 363 (2d Cir. 1992)).

## 2.   A New Trial Is Not Warranted

Defendant raises no factual arguments specific to his FRCP 59 motion, and instead relies on the evidence cited in support of his FRCP 50 motion and the Court's greater discretion to grant a new trial pursuant to FRCP 59.  Def. Mem. 3; Def. Reply Mem. 2.  Contrary to Plaintiff's argument, this thin support is not equivalent to waiving the motion.  Pl. Mem. 11-12.[20]

Nevertheless, even without viewing the facts strictly in the light most favorable to Plaintiff as under FRCP 50, the Court does not find that the verdict was "seriously erroneous" or a "miscarriage of justice."  Snyder, 486 F. App'x at 177.  Although this Court might have drawn different inferences than those made by the jury concerning who, if anyone, punched Plaintiff in his eye, it would not be appropriate for the Court to grant Defendant relief on that basis.  See LaFemina, 2004 WL 2600101, at *2.  FRCP 59 is not an invitation for the Court to bypass the jury's verdict, particularly where, as here, the case involved credibility findings.  See Raedle, 670 F.3d at 418.

As described above, the jury's identification of Defendant as the officer who punched Plaintiff was sufficiently supported by the circumstantial evidence, including multiple instances of discord between the police officer witnesses' accounts.  The jury ultimately resolved its assessment of the testimony in Plaintiff's favor, and the Court cannot say that the jury's verdict was "egregious."  DLC Mgmt. Corp., 163 F.3d at 134.  For example, the jury could have reasonably found unconvincing Defendant's testimony that no one opened the car door after he closed it, notwithstanding the three witnesses' testimony about the assault, Sergeant Karimzada's orders and the undisputedly broken window.  In addition, the jury may have found Mr. Roberts's

---

[20] Plaintiff also argues that Defendant's motion is untimely, Pl. Mem. 12, overlooking that FRCP 59 specifies that "[a] motion for a new trial must be filed no later than 28 days after the entry of judgment," Fed. R. Civ. P. 59(b).  As judgment has not yet entered in this matter, this argument has no merit.

corroboration of Plaintiff's testimony to be compelling, given Mr. Roberts's demeanor on the stand and his lack of connection to the Parties. The Court in its discretion finds no miscarriage of justice in the jury's verdict on the excessive force claim, and Defendant's motion for a new trial pursuant to FRCP 59 is denied.

<strong>C. Defendant's Motion To Vacate The Award Of Punitive Damages</strong>

<strong>1. Legal Standard For Vacating A Punitive Damages Award</strong>

The jury may award punitive damages in a Section 1983 case "where a plaintiff demonstrates that 'the defendant's conduct is . . . motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others or, in other words, when a plaintiff has produced evidence of a positive element of conscious wrongdoing or malice." De Michele, 2012 WL 4354763, at *22 (quoting Cameron v. City of New York, 598 F.3d 50, 69 (2d Cir. 2010)). "[T]here is no such thing as a correct amount of punitive damages," and the court's role is to ensure that the jury's determination is "fair, reasonable, predictable, and proportionate." Payne v. Jones, 711 F.3d 85, 93 (2d Cir. 2013). "Police brutality cannot be tolerated in our society, and punitive damages awards serve a critical role in deterring such misconduct." DiSorbo v. Hoy, 343 F.3d 172, 188 (2d Cir. 2003).

As outlined in the Supreme Court's decision in BMW of North America v. Gore, 517 U.S. 559, 574-75 (1996), the three factors to be considered in determining whether a punitive damages award is excessive are: 1) "the degree of reprehensibility of the [action at issue]"; 2) "the disparity between the harm or potential harm suffered by [the plaintiff] and his punitive damages award"; and 3) "the difference between this remedy and the civil penalties authorized or imposed in comparable cases." Gore, 517 U.S. at 575; see DiSorbo, 343 F.3d at 186 (same); Alla, 2013 WL 5815796, at *19 (same).

The Supreme Court and the Second Circuit have suggested that the first factor, reprehensibility, may be the most important of the three factors. DiSorbo, 343 F.3d at 186 (quoting Gore, 517 U.S. at 575). Considerations relevant to determining the degree of reprehensibility include: "1) whether a defendant's conduct was violent or presented a threat of violence; 2) whether a defendant acted with malice as opposed to mere negligence; and 3) whether a defendant has engaged in repeated instances of misconduct." Id.

Concerning the second factor, "the proper inquiry is whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct as well as the harm that actually has occurred." Id. at 187 (quoting Gore, 517 U.S. at 581). "When the compensable injury was small but the reprehensibility of the defendant's conduct was great, the ratio of a reasonable punitive award to the small compensatory award will necessarily be very high." Payne, 711 F.3d at 102.[21] Thus, the Second Circuit has rejected using a multiplier to determine an appropriate ratio between compensatory and punitive damages when a multiplier is not the "best tool" to assess the disparity between the two awards. DiSorbo, 343 F.3d at 187 (quoting Lee v. Edwards, 101 F.3d 805, 811 (2d Cir. 1996)).

The purpose of the third factor is to ensure that the defendant had notice that his or her actions could result in a comparable punitive damages award. See DiSorbo, 343 F.3d at 188. When the defendant is a police officer, his "training as a police officer gave him notice as to the

---

[21] In that case, the court found the jury's punitive damages award of $300,000 to be excessive compared to the compensatory damages award of $60,000 (a 5:1 ratio), but stated that it would not have found a 10:1 ratio to be excessive had the compensatory damages been valued at $10,000 and the punitive damages at $100,000. Payne, 711 F.3d at 103. In other words, while a smaller compensatory damages award may warrant a "very high" ratio between the compensatory and punitive damages awards, a large compensatory damages award may warrant a lower ratio. Id. at 102-103.

gravity of misconduct under color of his official authority, as well as notice that such misconduct could hinder his career." Id. (quoting Lee v. Edwards, 101 F.3d 805, 811 (2d Cir. 1996)).

## 2. The Punitive Damages Award of $16,000 Was Not Excessive

After receiving instructions on the standard for awarding damages,[22] the jury awarded Plaintiff $5,000 in compensatory damages and $16,000 in punitive damages on the excessive force claim against Defendant. Jury Damages Verdict, ECF No. 80.[23] Defendant contests the amount of the punitive damages award, but not the amount of the compensatory damages award (other than suggesting the liability award was flawed).

The three factors articulated in Gore weigh in favor of denying Defendant's motion to vacate the punitive damages award. See Gore, 517 U.S. at 575. Defendant does not discuss the

_____

[22] Concerning punitive damages, the jury was instructed that:

> In order to be entitled to punitive damages, you must find that the Plaintiff has clearly established that the acts of Defendant Ingrassia causing the proven injury were wanton or showed a callous or reckless disregard for the rights of others. . . . [P]unitive damages are not awarded as a matter of right but are awarded only if you believe Defendant Ingrassia acted so outrageously and evidenced such a degree of malice or callousness that an example and deterrent needs to be provided to assure that Defendant Ingrassia and others will be less likely to engage in such conduct in the future.

Jury Instructions on Damages 14, ECF No. 56. No post-trial argument has been raised as to the correctness of these instructions.

[23] Mr. Medina testified that the actions to which Officer Ingrassia was found guilty caused Mr. Medina physical and emotional injury, including: the gash and bruising to his right eye; dizziness that lasted for two to three weeks, for which he received follow-up medical care at the V. A. Hospital, Tr. 4 2:13-3:20; pain requiring painkiller medication for three or four months, id. at 3:14-20; a worsening of his pre-existing military-service-related post-traumatic stress disorder ("PTSD"), for which he continued to see a psychiatrist who prescribed him medication for depression and anxiety, id. at 3:22-4:5, 4:7-21, 66:1-3; nightmares in which he was beaten in the back of the police car "over and over again," id. at 5:2-10; and that his family felt the need to immediately move into the apartment of his parents and sister, to avoid being in the 75th Precinct, then they moved to North Carolina, id. at 5:11-6:3, 6:25-7:7.

standard outlined by Gore,[24] instead relying primarily on the same facts relied on for the FRCP

50 motion; mainly, Defendant argues that Mr. Medina's failure to identify Officer Ingrassia

warrants vacating the punitive damages award.  Def. Mem. 9.  As discussed above, the jury's

determination of Defendant's misconduct was sufficiently supported by the evidence, so

Defendant's mere reiteration of this argument in the context of the damages award is

unconvincing.  Instead, the Court will address the Gore factors.

Concerning the first and arguably most important Gore factor, it is beyond dispute that a

police officer's punching a handcuffed person is reprehensible behavior that may warrant an

award of significant punitive damages.  See Payne, 711 F.3d at 88 (finding that punitive damages

were warranted where the defendant officer punched and kneed the handcuffed plaintiff); Alla,

2013 WL 5815796, at *24-25 (same, where the defendant officer punched the handcuffed

plaintiff once); Thomas v. Kelly, 903 F. Supp. 2d 237, 270 (S.D.N.Y. 2012) (same, concerning

multiple defendants, one of whom stood on the plaintiff's legs while he was handcuffed).

Considerations such as that the act was violent and cannot be explained by mere negligence

show the act to be highly reprehensible.  See DiSorbo, 343 F.3d at 186.  In addition, the jury

found that Mr. Medina was punched by Officer Ingrassia at a time when Mr. Medina was in

custody in a closed and guarded police car, restrained and vulnerable.  The punch was therefore

unnecessary to maintain control over Mr. Medina.  These factors add to the reprehensibility of

Defendant's conduct.  See Payne, 711 F.3d at 101.  Nevertheless, there are also mitigating

factors, including the absence of repeated acts of unconstitutionally excessive force, see

DiSorbo, 343 F.3d at 186, and the brevity of the attack, that Defendant did not use a weapon and

that he did not cause any serious physical injuries, see Payne, 711 F.3d at 101.  Thus, while

_____

[24] Plaintiff also fails to discuss the relevant factors.  Pl. Mem. 12-13.

34

Defendant's conduct was not egregiously reprehensible, it was clearly and significantly reprehensible. This factor weighs in favor of denying Defendant's motion.

The second Gore factor also weighs in favor of denying the motion. Concerning the appropriate ratio of harm to punitive damages, Defendant argues that the approximately 3:1 ratio in this case is excessive. Def. Mem. 10. Defendant cites to Supreme Court precedent that "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process," State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 425 (2003) (finding an award with a 145:1 ratio to be excessive), and that an award of punitive damages four times greater than the compensatory damages may, but did not, "cross the line into the area of constitutional impropriety," Pac. Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 24 (1991). See Def. Mem. 10. Rather than supporting Defendant's argument, these citations show the reasonableness of the single-digit, approximately 3:1, ratio at issue in this case. Moreover, the relatively minor nature of Plaintiff's physical injuries does not detract from the reprehensible nature of Defendant's conduct. The circumstance here where a police officer assaulted a handcuffed arrestee justifies a greater discrepancy between the damages awards. See Campbell, 538 U.S. at 425; Payne, 711 F.3d at 102; see also Lee, 101 F.3d at 813 (finding a ratio of 75,000:1 to be appropriate on the facts of that case). Thus, the Court finds the approximately 3:1 ratio to reflect a reasonable relationship between the punitive and compensatory damages.

Concerning the third Gore factor, a consideration of comparable cases demonstrates the restraint of the jury's award in this case. In Alla, the court considered a punitive damages award of $150,000 on an excessive force claim where plaintiff was handcuffed and placed on a bed after officers responded to a stabbing in his apartment. Alla, 2013 WL 5815796, at *2, 24-25. While he was lying handcuffed on the bed, an officer punched him in the face, breaking his

cheekbone.  Id.  The Court determined that on those facts, the $150,000 award was not excessive

and was "if anything, somewhat conservative."  Id. at *25.  The reprehensible nature of the

conduct at issue in Alla is comparable to that at issue in this case, because in both cases, the

handcuffed plaintiff could do nothing to avoid the blow or otherwise defend himself.  The fact

that the plaintiff in Alla suffered a more serious and permanent injury does not necessarily render

the conduct more reprehensible, as Mr. Medina might also have suffered such an injury from a

punch to the face.  Thus, compared to the $150,000 award in Alla, the $16,000 award in this case

is not excessive.[25]

     In cases involving similar but more serious conduct, the Second Circuit has found

reasonable awards of punitive damages that are exponentially larger than the amount at issue in

this case.  For example, in Payne, the Second Circuit reduced a punitive damages award of

$300,000 to $100,000 where the defendant officer had repeatedly punched and kneed the

handcuffed plaintiff.  Payne, 711 F.3d at 88, 105.  In King v. Macri, the Court found reasonable

awards of $100,000 and $50,000 in punitive damages against two defendants for the unlawful

arrest of and use of excessive force against the plaintiff, whom the defendants punched and

choked during his arrest.  King v. Macri, 993 F.2d 294, 296, 299 (2d Cir. 1993).  Although these

cases present arguably more reprehensible conduct, the proportionally higher awards

demonstrate that the jury's award to Mr. Medina is not excessive.

---

[25] In Thomas, the court considered a $500,000 punitive damages award rendered against three
defendants.  Thomas, 903 F. Supp. 2d at 270.  The court found that a $325,000 award would be
reasonable, with $25,000 allotted specifically against an officer who subjected the plaintiff to
excessive force by standing on his legs while he was handcuffed and on the ground.  Id. at 267.
The conduct in Thomas specific to the $25,000 award was arguably less severe than the conduct
in this case, in that a punch to the head is more violent and may have greater risk of causing
serious, long-term harm, than standing on someone's legs.  Therefore, Thomas also supports a
finding that the $16,000 punitive damages award was not excessive.

Thus, all three <u>Gore</u> factors suggest that the jury's $16,000 punitive damages award was reasonable. The Court therefore denies Defendant's motion to vacate the punitive damages award.

### D. Plaintiff's Request For Leave To File A Motion For Judgment As A Matter Of Law

After Defendant's motion was fully briefed, Plaintiff requested permission to file a cross-motion for judgment as a matter of law with respect to Officer Ingrassia's alleged failure to intervene in an assault on Mr. Medina. Pl. Letter 1. Defendant objected that Plaintiff was precluded from bringing such a motion because Plaintiff failed to make the motion prior to the case going to the jury, Def. Letter 1,[26] and Plaintiff did not dispute this assertion or renew its request, Pl. Letter 2. <u>See</u> Fed. R. Civ. P. 50(a)(2) ("A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury."); Fed. R. Civ. P. 50(b) ("If the court does not grant a motion for judgment as a matter of law made under Rule 50(a) . . . [n]o later than 28 days after the entry of judgment . . . the movant may file a renewed motion . . . ."); <u>Negron v. Wesolowski</u>, 536 F. App'x 151, 153 (2d Cir. 2013) (a motion renewed under FRCP 50(b) "must be premised on grounds specified in the earlier motion"); <u>Welch v. United Parcel Serv., Inc.</u>, 871 F. Supp. 2d 164, 175-78 (E.D.N.Y. 2012) (discussing the specificity requirement).

Nevertheless, the Court need not determine whether Plaintiff comported with FRCP 50's procedural requirements, as Plaintiff's request to cross-move is moot in light of the Court's determination that Defendant's motions should be denied. The jury determined that Officer

---

[26] In addition, Defendant argues that Plaintiff's motion is "substantively flawed" for requesting judgment as a matter of law "on an issue that the jury has conclusively answered no [to] in the special interrogatories." Def. Letter 1. Notably, Defendant also moves for judgment as a matter of law on an issue—Officer Ingrassia's direct involvement in subjecting Mr. Medina to excessive force—that the jury determined in the special interrogatories. The Court rejects Defendant's argument.

Ingrassia directly participated in the assault, and the jury's verdict is upheld. Plaintiff's counsel's theory that Officer Ingrassia indirectly participated in the assault by failing to stop the direct participants would, in this case, contradict the verdict in Plaintiff's favor. Therefore, the Court denies Plaintiff's request as moot in light of the determination on Defendant's motions, and without addressing the possible procedural inadequacies of that motion.

III.    CONCLUSION

For the reasons stated in this Memorandum and Order, Defendant's motions for judgment as a matter of law, for a new trial, and to vacate the punitive damages award are denied. Plaintiff's motion for leave to file a cross-motion for judgment as a matter of law is denied as moot.

Judgment in favor of Plaintiff against Defendant in the amount of $5,000 in compensatory damages and $16,000 in punitive damages will enter.

Plaintiff timely moved for an award of attorneys' fees and costs under 42 U.S.C. § 1988. As previously Ordered, Plaintiff has ten days in which to serve and file his fully supported briefing on attorneys' fees and costs. Defendant must respond to Plaintiff's filing within fourteen days, and Plaintiff shall reply within seven days of Defendant's opposition.

**SO ORDERED.**

Dated:  Brooklyn, New York
          March 14, 2014

                                        _Vera M. Scanlon_
                                        _____
                                        VERA M. SCANLON
                                        United States Magistrate Judge