UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- X
DOMINGO MEDINA,                                          :
                                                        :
                          Plaintiff,                     :
                                                        :          **MEMORANDUM AND ORDER**
         -against-                                       :
                                                        :          No. 10 Civ. 5922 (VMS)
POLICE OFFICER ANTHONY DONALDSON       :
and POLICE OFFICER CHARLES INGRASSIA, :
                                                        :
                          Defendants.                    :
--------------------------------------------------------- X

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff Domingo Medina ("Plaintiff" or "Mr. Medina") brought this action pursuant to

42 U.S.C. § 1983 ("Section 1983") against Defendant Charles Ingrassia ("Officer Ingrassia" or

"Defendant"), among others,[1] and after a seven-day jury trial, the jury awarded Mr. Medina

$5,000.00 in compensatory damages and $16,000.00 in punitive damages for his claim that

Defendant used excessive force during Mr. Medina's arrest.  Jury Damages Verdict, ECF No. 80.

After trial, Defendant moved for judgment as a matter of law under Federal Rule of Civil

Procedure ("Rule") 50 or, in the alternative, for a new trial pursuant to Rule 59; Defendant also

moved to vacate the jury's award of punitive damages.  This Court denied that motion, and

denied as moot Plaintiff's request to file a cross-motion for judgment as a matter of law limited

to the excessive force claim.  Medina v. Donaldson, No. 10 Civ. 5922 (VMS), 2014 WL

1010951, at *1 (E.D.N.Y. Mar. 14, 2014).

---

[1] Prior to trial, Plaintiff voluntarily withdrew his claims against Defendants Sergeant Mohammed
Karimzada ("Sergeant Karimzada"), Police Officer Jackson, Police Officer Forbes, Police
Officer Talavera and Police Officer Melchor Alban ("Officer Alban").  See Am. Compl., ECF
No. 7; Stip. & Order of Partial Withdrawal, ECF No. 20.  Defendant City of New York (the
"City") was not referred to as a defendant during trial, and the jury did not find in Plaintiff's
favor as to his claims against Defendant Police Officer Anthony Donaldson ("Officer
Donaldson").  Jury Verdict Sheet, ECF No. 59 (finding that Officer Donaldson did not subject
Plaintiff to excessive force).

Plaintiff now moves pursuant to 42 U.S.C. § 1988(b) for an award of attorneys' fees and costs related to the work of his attorneys, Anthony Ofodile, Esq. ("Mr. Ofodile") and Franciscus Ladejola-Diaba, Esq. ("Mr. Ladejola-Diaba"). Specifically, Plaintiff requests an award of $217,175.00 for 422.5 hours of legal work and 23.7 hours of travel time billed by Mr. Ofodile at a rate of $500.00 per hour (with travel time billed at half-rate, or $250.00 per hour); an award of $109,040.00 for 218.08 hours of legal work[2] billed by Mr. Ladejola-Diaba at a rate of $500.00 per hour; and costs totaling $1,214.00. The grand total of Plaintiff's requested attorneys' fees and costs is $327,429.00. Pl. Mem. 5-6.[3]

For the reasons discussed below, Plaintiff's motion is granted in part and denied in part. The Court finds that Plaintiff, as the prevailing party, should be awarded $72,992.50 for 196.40 hours of legal work and 24.30 hours of travel time billed by Mr. Ofodile at a rate of $350.00 per hour (with travel time billed at half-rate); $26,987.13 for 94.15 hours of legal work and 7.97 hours of travel time billed by Mr. Ladejola-Diaba at a rate of $275.00 per hour (with travel time billed at half-rate); and $954.00 in costs, for a total award of $100,933.63.

## I.    BACKGROUND

The Court presumes the reader's familiarity with the factual background and procedural history of this case, which is described in detail in Medina v. Donaldson, No. 10 Civ. 5922 (VMS), 2014 WL 1010951, at *1 (E.D.N.Y. Mar. 14, 2014).

---

[2] Although Plaintiff's memorandum of law refers to "218.8" hours of work performed by Mr. Ladejola-Diaba, Pl. Mem. 6, ECF No. 86, Mr. Ladejola-Diaba stated that he billed for 218.08 hours of legal work. Ladejola-Diaba Decl. ¶ 18 ("I respectfully request a total payment of $109,040.00 based [on] 218.08 hours of legal work."). The Court assumes that the reference to "218.8" hours is a typographical error, as 218.08 hours at $500.00 per hour results in the $109,040.00 award that Plaintiff requests for Mr. Ladejola-Diaba's legal work.

[3] Here, the Court refers to the number of attorney hours originally requested by Plaintiff in his motion for attorneys' fees. As discussed below, Plaintiff's supplemental filings contained different totals.

In support of his motion, Plaintiff filed a memorandum of law, Pl. Mem., ECF No. 86; the declaration of Mr. Ofodile, Ofodile Decl., ECF No. 84-1, and his "Statement of Legal Services," a record that "was kept contemporaneously with the services performed when they were performed," Ofodile Decl. ¶ 5 (referring to ECF No. 85-2); the declaration of Mr. Ladejola-Diaba, Ladejola-Diaba Decl., ECF No. 85, and his "Statement of Legal Services," which he likewise described as being "kept contemporaneously with the services performed when they were performed," Ladejola-Diaba Decl. ¶ 4 (referring to ECF No. 84-2);[4] a statement of costs, ECF No. 85-1; a $90.00 check from Mr. Ofodile's firm dated March 8, 2013, and addressed to Edgar Roberts ("Mr. Roberts"), a trial witness, for "subpoena & transport fee," as well as a $40.00 check from Mr. Ofodile's firm dated March 10, 2013 and addressed to Denzil Haynes ("Mr. Haynes"), a trial witness, for "subpoena fee," ECF No. 85-3;[5] a reply memorandum of law, Pl. Reply Mem., ECF No. 91; and Mr. Ladejola-Diaba's supplemental declaration, Ladejola-Diaba Supp. Decl., EFC No. 91-1.

The Court ordered Plaintiff's counsel to resubmit their time records, formatted with columns for the date of the work performed; description of the work performed; hours claimed as a number (i.e., "1.5" and not "11:00 a.m. to 12:30 p.m."); and an indication as to whether the

---

[4] Mr. Ofodile's contemporaneous time records were attached to Mr. Ladejola-Diaba's declaration, and vice versa. Although Mr. Ofodile's declaration states that Mr. Ladejola-Diaba's declaration, the statement of costs and the subpoena fee checks were attached to Mr. Ofodile's declaration, these documents were filed separately. Ofodile Decl. ¶¶ 6-8; Ladejola-Diaba Decl.

[5] The Court, sua sponte, sealed Docket No. 85-3 so that it is viewable by the Court and case participants only, because Plaintiff's counsel failed to redact financial account information from this exhibit, as required by Rule 5.2(a)(4). The information contained therein that is relevant to the present motion is described above.

entry was for legal work or travel time. Scheduling Order, Apr. 14, 2014, ECF.[6]  Hereinafter,

the Court will refer to the contemporaneous time records, see ECF Nos. 84-1 (Mr. Ladejola-

Diaba's records); 85-2 (Mr. Ofodile's records), as the "Time Records," and the reformatted time

records, see ECF Nos. 87 (Mr. Ofodile's records); 87-1 (Mr. Ladejola-Diaba's records), as the

"Reformatted Records."

The Court also ordered Plaintiff to file an affidavit identifying individuals referenced in

the time records and attaching "invoices or other documents supporting the claimed costs."

Scheduling Order, Apr. 14, 2014, ECF.  Plaintiff's counsel failed to submit such an affidavit or

any additional documentation supporting the claimed costs.

In opposition to Plaintiff's motion, Defendant submitted a memorandum of law with

exhibits.  Def. Mem., ECF No. 90.

## II.     LEGAL STANDARD

Pursuant to 42 U.S.C. § 1988(b), "[i]n any action or proceeding to enforce a provision of

[§ 1983] . . . the court, in its discretion, may allow the prevailing party, other than the United

States, a reasonable attorney's fee as part of the costs . . . ."  42 U.S.C. § 1988(b).  "The general

purpose of fee-shifting statutes such as § 1988(b) is to permit plaintiffs with valid claims to

attract effective legal representation and 'thereby to encourage private enforcement of civil rights

statutes, to the benefit of the public as a whole.'"  Green v. Torres, 361 F.3d 96, 100 (2d Cir.

2004) (quoting Quaratino v. Tiffany & Co., 166 F.3d 422, 426 (2d Cir. 1999)).

"[P]laintiffs may be considered prevailing parties for attorney's fees purposes if they

succeed on any significant issue in litigation which achieves some of the benefit the parties

---

[6] The Court thrice ordered Plaintiff's counsel to submit their reformatted time sheets as an Excel
spreadsheet or word processing document; Plaintiff's counsel failed to comply with the first two
Orders.  Orders, April 14, 2014, April 21, 2014, April 25, 2014, ECF.

sought in bringing suit." Kirk v. N.Y.S. Dep't of Educ., 644 F.3d 134, 137 (2d Cir. 2011)

(quoting Farrar v. Hobby, 506 U.S. 103, 109 (1992)); see Buckhannon Bd. & Care Home, Inc. v.

W. Virginia Dep't of Health & Human Res., 532 U.S. 598, 603 (2001) (a prevailing party "is one

who has been awarded some relief by the court"). A damages award will "usually satisfy" the

requirements for being a prevailing party. Lefemine v. Wideman, 133 S. Ct. 9, 11 (2012). A

prevailing party need not "succeed on the central issue in the litigation" nor "achieve the primary

relief sought." Favors v. Cuomo, --- F. Supp. 2d ---, No. 11 Civ. 5632 (DLI), 2014 WL

4065100, at *7 (E.D.N.Y. Aug. 14, 2014) (quoting Texas State Teachers Ass'n v. Garland Indep.

Sch. Dist., 489 U.S. 782, 784, 790-91 (1989)).

     The predominant method for determining a fee award is to calculate the lodestar figure by

multiplying a reasonable hourly rate by the reasonable number of hours expended. See Perdue v.

Kenny A., 559 U.S. 542, 546, 551 (2010). "[A] 'reasonable' fee is a fee that is sufficient to

induce a capable attorney to undertake the representation of a meritorious civil rights case." Id.

at 552. The calculation of a reasonable fee is within the district court's discretion. See Millea v.

Metro-N. R. Co., 658 F.3d 154, 166 (2d Cir. 2011). The burden is on the party seeking the fee

award to prove that the requested fees and hours are reasonable. See Hugee v. Kimso

Apartments, LLC, 852 F. Supp. 2d 281, 298 (E.D.N.Y. 2012) (citing Hensley v. Eckerhart, 461

U.S. 424, 433 (1983)). Considerations relevant to determining the reasonable fee include: "(1)

the difficulty of the matter; (2) the nature and extent of the services rendered; (3) the time

reasonably expended on those services; (4) the quality of performance by counsel; (5) the

qualifications of counsel; (6) the amount at issue; and (7) the results obtained (to the extent

known)." Aurora Commercial Corp. v. Approved Funding Corp., No. 13 Civ. 230 (RPP), 2014

WL 3866090, at *3 (S.D.N.Y. Aug. 6, 2014); see In re One Infant Child, No. 12 Civ. 7797

(PKC), 2014 WL 704037, at *2 (S.D.N.Y. Feb. 20, 2014) (same; citing <u>Arbor Hill Concerned</u>
<u>Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections</u>, 522 F.3d
182, 184 (2d Cir. 2008)); Pl. Mem. 2 (citing <u>Arbor Hill</u> and concurring in the relevant factors for
consideration).

Congress intended that fee awards in civil rights cases "be governed by the same
standards which prevail in other types of equally complex Federal litigation, such as antitrust
cases[,] and not be reduced because the rights involved may be nonpecuniary in nature." <u>Blum</u>,
465 U.S. at 893 (quoting S. Rept. No. 94–1011, p. 6 (1976)).

### III.    ANALYSIS

As stated above, Plaintiff requests an award of $217,175.00 for 422.5 hours of legal work
and 23.7 hours of travel time billed by Mr. Ofodile at a rate of $500.00 per hour (with travel time
billed at half-rate); an award of $109,040.00 for 218.08 hours of legal work billed by Mr.
Ladejola-Diaba at a rate of $500.00 per hour; and costs totaling $1,214.00, for a grand total of
$327,429.00.  Pl. Mem. 5-6.

There is no dispute that Plaintiff, who obtained a damages award from the jury, is the
prevailing party.  Instead, Defendant argues that the requested hourly rates are unreasonably
high; the hours spent were "clearly excessive, redundant, and otherwise unnecessary"; counsels'
timekeeping was "egregiously imprecise"; and Plaintiff's success was "minimal bordering on
nominal."  Def. Mem. 4, 13, 15, 21.  Defendant requests that the Court reduce Mr. Ofodile's
hourly rate to $350.00; reduce Mr. Ladejola-Diaba's hourly rate to $275.00; utilize a 60%
across-the-board reduction of the hours expended; and also deny or significantly reduce the
hours requested related to the fee application.  Def. Mem. 24.

### A.   Plaintiff's Counsels' Billing Records

As a preliminary matter, it is necessary to make a determination as to certain typographical and mathematical errors in Plaintiff's counsels' billing records.  The Court notes the following inconsistencies and apparent errors in Mr. Ofodile's time records:

1.   The December 17, 2010 entry for 5.6 hours on the Time Records is for 5.7 hours on the Reformatted Records.  Compare ECF No. 85-2 at 1 with ECF No. 87 at 2.

2.   The December 28, 2011 entry on the Time Records for 1.8 hours for "Response to Motion to Compel" is missing from the Reformatted Records. Compare ECF No. 85-2 at 3 with ECF No. 87 at 4.

3.   The four December 29-30, 2011 entries totaling 10.1 legal hours and 2 travel hours related to Mr. Medina's deposition appear only on the Reformatted Records.  Compare ECF No. 85-2 at 3 with ECF No. 87 at 4.

4.   The two January 12, 2012 travel time entries for 0.7 hours on the Time Records are for 0.8 hours on the Reformatted Records.  Compare ECF No. 85-2 at 3 with ECF No. 87 at 4.

5.   The February 25, 2013 entry for 0.8 hours on the Time Records is for 8 hours on the Reformatted Records.  Compare ECF No. 85-2 at 4 with ECF No. 87 at 6.

6.   The March 7, 2013 entry on the Time Records for 0.7 hours for traveling to Court is for 0.8 hours on the Reformatted Records.  Compare ECF no. 85-2 at 5 with ECF No. 87 at 7.  In addition, the March 7, 2013 entry for 1.7 hours at "Court Conference" on the Time Records is recorded as 0.3 hours for a "Court Conference" and 0.6 hours for "Travel Back", totaling 0.9 hours, on the Reformatted Records.  Compare ECF No. 85-2 at 5 with ECF No. 87 at 7.

7.   Two March 9, 2013 entries for 0.6 hours on the Time Records are for 0.7 hours on the Reformatted Records.  Compare ECF No. 85-2 at 5 with ECF No. 87 at 8.

8.   The March 11, 2013 entry for 1.5 hours on the Time Records is for 0.5 hours on the Reformatted Records.  Compare ECF No. 85-2 at 6 with ECF No. 87 at 9.

9.   The March 11-12, 2013 entry for 1.6 hours on the Time Records is for 1.7 hours on the Reformatted Records.  Compare ECF No. 85-2 at 6 with ECF No. 87 at 9.

10.  The March 12, 2013 entry for 0.5 hours on the Time Records is for 0.8 hours on the Reformatted Records.  Compare ECF No. 85-2 at 6 with ECF No. 87 at 9.

11.     The March 13, 2013 entry for 0.6 hours on the Time Records is for 0.7 hours on the Reformatted Records.  Compare ECF No. 85-2 at 6 with ECF No. 87 at 10.

12.     The March 14, 2013 entry for 9.4 hours on the Time Records is for 9.9 hours on the Reformatted Records.  Compare ECF No. 85-2 at 7 with ECF No. 87 at 10.

13.     The March 15, 2013 entry for 0.6 hours on the Time Records is for 0.5 hours on the Reformatted Records.  Compare ECF No. 85-2 at 7 with ECF No. 87 at 11.

14.     The March 17, 2013 entry for 8.6 hours on the Time Records is for 8.7 hours on the Reformatted Records.  Compare ECF No. 85-2 at 7 with ECF No. 87 at 11.

15.     The March 18, 2013 entry for 1.3 hours on the Reformatted Records should be for 1.2 hours (10:48 p.m. to midnight).  ECF No. 87 at 11.

16.     The March 19, 2013 entry for 1.2 hours on the Time Records for "travel for court" is for 1.3 hours on the Reformatted Records for "travel for office." Compare ECF No. 85-2 at 7 with ECF No. 87 at 12.

17.     The March 19, 2013 entry for 0.6 hours on the Time Records is for 0.7 hours on the Reformatted Records.  Compare ECF No. 85-2 at 8 with ECF No. 87 at 12.

18.     The May 17, 2013 entry for 2.2 hours on the Time Records is for 2.3 hours on the Reformatted Records.  Compare ECF No. 85-2 at 8 with ECF No. 87 at 13.

19.     The June 5, 2013 entry for 0.2 hours on the Time Records is for 0.3 hours on the Reformatted Records.  Compare ECF No. 85-2 at 9 with ECF No. 87 at 13.

20.     The June 5, 2013 entry for 2.6 hours on the Time Records is for 2.7 hours on the Reformatted Records.  Compare ECF No. 85-2 at 9 with ECF No. 87 at 14.

21.     The June 13, 2013 entry for 0.6 hours of legal work for "Traveling to Court to view transcripts," should instead be listed as travel time.  ECF No. 87 at 14.  It is followed by a separate entry for viewing the transcripts.

22.     The June 18, 2013 entry for 4.8 hours on the Reformatted Records should be for 3.8 hours (1:12 p.m. to 5:00 p.m.).  ECF No. 87 at 15.

23.     The July 16, 2013 entry for 3.6 hours on the Time Records is for 3.7 hours on the Reformatted Records.  Compare ECF No. 85-2 at 11 with ECF No. 87 at 16.

24.     The July 22, 2013 entry for 0.6 hours on the Time Records is for 0.7 hours on the Reformatted Records.  Compare ECF No. 85-2 at 11 with ECF No. 87 at 17.

25.     The July 22, 2013 entry for 4.6 hours on the Time Records is for 4.7 hours on the Reformatted Records.  <u>Compare</u> ECF No. 85-2 at 11 <u>with</u> ECF No. 87 at 17.

26.     The July 27, 2013 entry for 2.6 hours on the Time Records is for 2.7 hours on the Reformatted Records.  <u>Compare</u> ECF No. 85-2 at 11 <u>with</u> ECF No. 87 at 18.

27.     The March 18, 2014 entry for 3.6 hours on the Time Records is for 3.7 hours on the Reformatted Records.  <u>Compare</u> ECF No. 85-2 at 12 <u>with</u> ECF No. 87 at 18.

28.     The March 18, 2014 entry for 2.6 hours on the Time Records is for 2.7 hours on the Reformatted Records.  <u>Compare</u> ECF No. 85-2 at 12 <u>with</u> ECF No. 87 at 19.

Plaintiff calculated Mr. Ofodile's hours, based on his Time Records, to be 422.5 hours of legal work and 23.7 hours of travel time.  On Mr. Ofodile's Reformatted Records, the totals are 457.2 hours of legal work and 26.6 hours of travel time, with no explanation provided for the difference.  Due to this inconsistency and the numerous errors in the records, the Court has made its own calculation, a time-consuming process that would not have been necessary had counsel's records been more carefully kept, prepared and reviewed.

Where the Time Records and Reformatted Records conflicted, the Court used the hours claimed in the Time Records; as counsel has stated that record was created close in time to the work performed, it is likely the more accurate record.

Concerning the 10.1 legal hours and 2 travel hours related to Plaintiff's deposition that appear in the Reformatted Records but not the Time Records (as noted at No. 3 above), the Court will only credit the 4.75 deposition hours that are supported by the court reporter's transcript.  <u>See</u> ECF No. 90-1 (deposition transcript recording a start time of 10:25 a.m. and an end time of 4:10 p.m., including a forty-minute lunch break).  The requirement that attorneys support their fee requests with contemporaneous time records is a "hard-and-fast-rule" with only rare

exceptions. <u>Scott v. City of New York</u>, 643 F.3d 56, 57 (2d Cir. 2011).[7] Moreover, the Court's

request that the Time Records be reformatted was not an invitation to add time entries.[8]

Scheduling Order, Apr. 14, 2014, ECF.

In summary, the Court calculates Mr. Ofodile's total requested hours to be 436.45 hours

of legal work and 27.00 hours of travel time.

Although the Court did not observe such typographical or mathematical errors in Mr.

Ladejola-Diaba's time records, one anomaly must be noted. All of the hours billed in Mr.

Ladejola-Diaba's Time Records are for legal work, but in his Reformatted Records, he billed

portions of eight entries as travel time (rather than billing those entries as solely legal work); he

did not make any addition to the total number of hours billed. <u>Compare</u> ECF No. 84-2 <u>with</u> ECF

No. 87-1. In other words, in place of the request in Mr. Ladejola-Diaba's Time Records for

---

[7] In <u>Scott</u>, the Second Circuit noted that where an attorney failed to maintain contemporaneous time records, "entries in official court records (<u>e.g.</u> the docket, minute entries, and transcriptions of proceedings) may serve as reliable documentation of an attorney's compensable hours," but a court could not compensate an attorney for his preparation, travel or other work observed by the Court where such work was not captured by the official court records. <u>Scott</u>, 643 F.3d at 57, 59. Therefore, given Mr. Ofodile's failure to record his preparation and travel time in his Time Records, this Court may not credit Mr. Ofodile for that time, even though he plainly spent some amount of time traveling to and from the deposition.

Furthermore, counsel was previously cautioned about providing accurate contemporaneous time records and bringing any deviation from that requirement to the court's attention. In <u>Spencer v. City of New York</u>, No. 06 Civ. 2852 (KMW), 2013 WL 6008240 (S.D.N.Y. Nov. 13, 2013), the court expressed disappointment after Mr. Ofodile "failed to reveal" that the time records of an associate at his firm were not contemporaneous "and instead provided the Court with ambiguous information" that might suggest the records were contemporaneous. <u>Id.</u> at 8 n.6 ("In the future, counsel should be forthright in all submissions to the Court.").

[8] Defendant questions the credibility of the 7.3 hours billed for "[d]eposition of Plaintiff and conversations afterwards about deposition and next steps," ECF No. 87 at 4 (12/30/2011 entry), as, according to Defendant, "as soon as the deposition ended, plaintiff left the room to catch a flight while Mr. Ofodile and [Defendant's counsel] had further discussions about the case, both on and off the record." Def. Mem. 15. Defendant does not state how long this conversation between counsel lasted. Plaintiff's reply memorandum does not dispute Defendant's characterization of these events.

218.08 hours for legal work, <u>see</u> ECF No. 84-2; Ladejola-Diaba Decl. ¶ 18, he requested in his Reformatted Records 209.23 hours for legal work and 8.85 hours for travel time, which totals 218.08 hours, <u>see</u> ECF No. 87-1 at 3. As Plaintiff appropriately requests that his counsel be compensated at half-rate for their travel time, Mr. Ladejola-Diaba is in effect reducing his requested fees in the Reformatted Records. Therefore, the Court will use those sums rather than those in the Time Records, although it is concerning that these hours were originally described and billed as "legal work" if, in fact, they were not. Ladejola-Diaba Decl. ¶ 18.

### B. The Reasonable Hourly Rate for Plaintiff's Counsel

A reasonable hourly rate is determined based on current market rates "for similar services by lawyers of reasonably comparable skill, experience, and reputation." <u>Blum v. Stenson</u>, 465 U.S. 886, 896 n.11 (1984); <u>see</u> <u>Reiter v. MTA N.Y.C. Transit Auth.</u>, 457 F.3d 224, 232 (2d Cir. 2006) (stating that the court must use current, prevailing rates for that court's district); <u>Brady v. Wal-Mart Stores, Inc.</u>, 455 F. Supp. 2d 157, 214 (E.D.N.Y. 2006) (recognizing that "the law of this circuit" is to "use[] current rates in the lodestar"), <u>aff'd</u>, 531 F.3d 127 (2d Cir. 2008).

Reasonable hourly rates in the Eastern District of New York "are approximately $300-$450 per hour for partners, $200-$300 per hour for senior associates, and $100-$200 per hour for junior associates." <u>Hugee</u>, 852 F. Supp. 2d at 298-99 (quoting <u>Pilitz v. Inc. Village of Freeport</u>, No. 07 Civ. 4078 (ETB), 2011 WL 5825138, at *4 (E.D.N.Y. Nov. 17, 2011), and listing cases); <u>see</u> <u>U.S. Bank, N.A. v. Byrd</u>, 854 F. Supp. 2d 278, 286 (E.D.N.Y. 2012). "The highest rates in this district are reserved for expert trial attorneys with extensive experience before the federal bar, who specialize in the practice of civil rights law and are recognized by their peers as leaders and experts in their fields." <u>Hugee</u>, 852 F. Supp. 2d at 300; <u>see</u> <u>Gortat v. Capala Bros.</u>, No. 07 Civ. 3629 (ILG), 2014 WL 3818614, at *7 (E.D.N.Y. Aug. 4, 2014) ("[R]ates higher than $350

per hour are generally reserved for the unusually expert litigation of civil rights claims or other special circumstances.").

### 1.    Mr. Ofodile's Reasonable Hourly Rate

In support of Mr. Ofodile's requested hourly rate of $500.00, Plaintiff asserts that Mr. Ofodile is a shareholder in the firm of Ofodile & Associates, P.C., and was lead trial counsel in this case. Ofodile Decl. ¶ 1. Mr. Ofodile was admitted to practice law in New York State in 1994,[9] and since that time, his practice has focused on civil rights and employment discrimination litigation. Id. ¶¶ 9, 12. Mr. Ofodile asserts that the requested rate of $500.00 per hour is justified by his reputation in the legal community, see Pl. Reply Mem. 3-4, his educational background, see Pl. Mem. 4, and by "the difficulty and complexity of the case," Ofodile Decl. ¶ 21.

Mr. Ofodile states that "[t]he last hourly rate awarded to Mr. Ofodile in this Court was $325.00 an hour in the case of Khan [v. HIP Centralized Lab. Servs. Inc., No. 03 Civ. 2441 (DGT), 2009 U.S. Dist. LEXIS 65415 (E.D.N.Y. July 29, 2009)]." Pl. Reply Mem. 2-3. In that case, the defendant did not challenge Mr. Ofodile's requested hourly rate or number of hours worked. Khan, 2009 U.S. Dist. LEXIS 65415, at *8; see Hightower v. Nassau Cnty. Sheriff's Dep't, 325 F. Supp. 2d 199, 212 (E.D.N.Y. 2004) (setting Mr. Ofodile's hourly rate at $250.00 in "a garden-variety Section 1983 excessive force case"), opinion vacated in part on reconsideration, 343 F. Supp. 2d 191 (E.D.N.Y. 2004); see also Spencer v. City of New York, No. 06 Civ. 2852 (KMW), 2013 WL 6008240, at *5 (S.D.N.Y. Nov. 13, 2013) ("Mr. Ofodile does not submit evidence of any court awarding him an hourly rate of $500"; setting Mr. Ofodile's hourly rate at $400.00); Quiller v. The City of New York, No. 06 Civ. 6846 (GAY)

---

[9] Mr. Ofodile was admitted to practice law in Nigeria in 1988. Id. ¶ 16.

(S.D.N.Y. Apr. 1, 2011) (ECF No. 62 at 4) (setting Mr. Ofodile's hourly rate at $400.00 in a case in which the defendants did not dispute the requested rate).[10]

When courts award experienced attorneys higher rates, it is not in recognition of the date they joined the bar, but rather, it acknowledges when years of legal practice result in work of a superior quality. "[C]onsiderations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate." Perdue, 559 U.S. at 553 (quoting Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 566 (1986), supplemented, 483 U.S. 711 (1987)); see Fastener Dimensions, Inc. v. Mass. Mut. Life Ins. Co., No. 12 Civ. 8918 (DLC), 2014 WL 5455473, at *8 (S.D.N.Y. Oct. 28, 2014) (considering the "poor" quality of counsel's work in determining the proper lodestar amount); Stanczyk v. City of New York, 990 F. Supp. 2d 242, 247 (E.D.N.Y. 2013) ("The reasonable hourly rate reflects factors including the complexity of the case and the quality of counsel's representation.").

In this case, counsel's many years of experience do not merit an hourly rate of $500.00 because that experience did not result in a higher quality of legal work. In fact, there appear to have been several lapses in counsel's preparation of the case, and as counsel asked for schedule extensions to perform such work, it does not appear that its absence was the result of any strategic decision. For example, Plaintiff's counsel failed to request any discovery during the discovery period, despite obtaining an extended discovery schedule to remedy an initial failure to

---

[10] The awards in the Southern District of New York cases of Spencer and Quiller are of limited relevance in this case, as the pertinent issue is the prevailing rate in the community and, "[f]or present purposes, 'the community' is the Eastern District, not the Southern District of New York." In re Nassau Cnty. Strip Search Cases, 12 F. Supp. 3d 485, 497 (E.D.N.Y. 2014). Mr. Ofodile, an attorney whose firm is located in the Eastern District, does not raise any argument that Southern District rates are relevant in this case; in fact, he emphasized that he was not relying on the rates awarded in the Southern District. Pl. Reply Mem. 2 ("Plaintiff has neither cited nor relied on Southern District of New York cases for the rates requested in this motion.").

meet discovery and other Court-ordered deadlines.  Specifically, after Mr. Ofodile first neglected

to serve discovery requests, the Magistrate Judge then assigned to the case, the Honorable

Ramon E. Reyes, Jr., ordered the Parties to file a proposed revised discovery schedule within two

weeks.  Conf. Tr., Sept. 22, 2011 ("Conf. Tr.") 5:15-6:17, ECF No. 9.  Two months later, after

Mr. Ofodile still had not served discovery and had failed to return defense counsel's

communications about the revised schedule, Mr. Ofodile asked the Court not to close discovery,

and the Court granted him a final extension.  Id.  At that time, the Court warned Mr. Ofodile

about his conduct in litigating this case, "[m]issing conferences, not complying with deadlines. . .

. [I]f it happens again, you're going to get sanctioned.  . . . It's not fair to your adversary.  It's not

fair to us.  It's not fair to your client."  Id. at 5:5-13.  Nonetheless, Plaintiff's counsel served no

discovery requests and noticed no depositions by the extended deadline.  Def. Mem. 22

(Plaintiff's counsel never served discovery requests in this case).[11]  Plaintiff's counsel might

have, by way of example, deposed the relevant police officers or sought to obtain Civilian

Complaint Review Board ("CCRB") files concerning these officers.[12]  Although the Court does

not agree with Plaintiff's counsel, see Ofodile Decl. ¶ 21, that this was a difficult and complex

case—to the contrary, this was a straightforward matter involving a single plaintiff, discrete

---

[11] In his reply papers, Plaintiff does not dispute Defendant's assertion that Plaintiff made no
discovery requests.  As noted above, this is not a case in which Plaintiff's counsel determined
that no discovery was necessary, as counsel sought to keep the discovery period open past the
Court's initial deadline.

[12] Notwithstanding the lack of discovery requests, Defendant's counsel agreed to share with
Plaintiff's counsel, in the days immediately before the trial, the CCRB investigation transcripts
concerning the events at issue in this case.  Order, Mar. 7, 2013.

events that lasted minutes and no novel or complex issues of law—counsel's failure to conduct discovery is puzzling in light of counsel's own assessment of the complexity of the case.[13]

By way of another example, after Defendant moved, post-trial, for judgment as a matter of law on the basis of allegedly insufficient evidence to support the verdict, Plaintiff submitted an opposition brief that contained no citations to the trial record. The Court noted that "[i]t is not possible for the Court to determine on what evidence Plaintiff [relies] in opposing the motion and arguing that there is sufficient evidence to support the verdict," and the Court ordered Plaintiff to "resubmit the memorandum with citations to the record." Order, May 31, 2013, ECF. After a motion hearing, the Court again ordered Plaintiff to supplement his opposition papers, with an "amplified argument, replete with citation to the record." Minute Entry, July 12, 2013, ECF.

The opposition papers ultimately submitted by Plaintiff's counsel, in fact, undermined Plaintiff's position, in that counsel argued that the police officer in the front of the police car punched Plaintiff in the eye, a theory that contradicted Plaintiff's consistent testimony during his CCRB interview, the liability phase of trial and the damages phase of trial that the police officer on his right punched him in the eye. Medina, 2014 WL 1010951, at *13 n.19 (noting counsel's misrepresentations of Plaintiff's testimony concerning which officer punched him, as well as which officers wore gloves). Plaintiff's testimony as to the location of the officer who punched him was of key importance because it supported the jury's finding that Defendant was the officer who punched Plaintiff. Id. at *12 ("[A]lthough other inferences are possible, the jury could have

---

[13] Plaintiff argues that Defendant's "[c]ounsel cannot reasonably argue that because Plaintiff did not conduct the depositions of all (or any) of the named [D]efendants, he deserve[s] to have his fees cut, and at the same time while[sic] arguing that for the work that Counsel did do, the fees should also be cut." Pl. Reply Mem. 10. These are two separate issues: the first being what hourly rate is merited in the circumstances, including counsel's performance, and the second being whether the hours counsel expended were reasonable.

inferred that Defendant—the officer whom the jury could have found was walking to Mr. Medina's right, put Mr. Medina into the car from the right-hand side, closed the rear right-hand door behind Mr. Medina, and stood guard on the right-hand side of the car—was also the officer who opened the right-hand door and punched Mr. Medina in the eye").  Had the Court credited Mr. Ofodile's version of Plaintiff's testimony (that instead, Mr. Medina was punched by an officer located in the front of the police vehicle), the grounds the Court ultimately found supported the jury's verdict against Defendant would lack logic or support in the record, and Plaintiff may not have been the prevailing party in this case.

Even crediting, arguendo, counsel's assertions as to the depth of his knowledge and his reputation in his field, the efforts propounded in this case were not on par with those that merit fees at the higher end of the scale, as counsel's expertise was not reflected in the quality of the legal work.  Thus, in Stanczyk, a court in this District reduced an attorney's requested hourly rate of $450.00 to $350.00 based on the poor quality of his representation of the plaintiff, which included a failure to provide the jury guidance as to the plaintiff's requested damages, after which the jury awarded relatively meager damages for what the court termed "disturbing" events involving police officers punching a "diminutive older woman."  Stanczyk, 990 F. Supp. 2d at 247-51.  On the same grounds, the Second Circuit affirmed the trial court's downward adjustment of counsel's hourly rate.  Stanczyk v. City of New York, 752 F.3d 273, 285 (2d Cir. 2014).

Here, the Court must determine the reasonable hourly rate for an attorney who, inter alia, conducted no discovery, was required to resubmit briefing to properly support his arguments, and misrepresented Plaintiff's key testimony in a manner that might have led to the jury's verdict being vacated, had the Court accepted counsel's argument.  On the other hand, the Court found

Mr. Ofodile's performance in the courtroom to reflect some of his significant experience, and the jury returned a verdict in Plaintiff's favor.

In such circumstances, the Court finds that an hourly rate of $350.00 is reasonable. Although lower than counsel's requested rate, it is more in line with rates recently awarded to attorneys having around twenty years of civil rights litigation experience. See Gagasoules v. MBF Leasing LLC, No. 08 Civ. 2409 (ADS) (ARL), 2013 WL 1760134, at *4 (E.D.N.Y. Apr. 24, 2013) (finding $350.00 to be the appropriate hourly rate for partners with 25 to 30 years of experience where the case was not complex and did not "require[] particular skills of expertise"); Spence v. Ellis, No. 07 Civ. 5249 (TCP) (ARL), 2012 WL 7660124, at *6 (E.D.N.Y. Dec. 19, 2012) (awarding an attorney with twenty years of civil rights litigation experience at $375.00 per hour), report & recommendation adopted, No. 07 Civ. 5249 (TCP) (ARL), 2013 WL 867533 (E.D.N.Y. Mar. 7, 2013); see also Hargroves v. City of New York, No. 03 Civ. 1668 (RRM) (VMS), 2014 WL 1270585, at *12 (E.D.N.Y. Jan. 6, 2014) (awarding a civil rights litigator with over seventeen years' experience at an hourly rate of $400.00), report & recommendation adopted, No. 03 Civ. 1668 (RRM) (VMS), 2014 WL 1271039 (E.D.N.Y. Mar. 26, 2014); Struthers v. City of New York, No. 12 Civ. 242, 2013 WL 5407221, at *8 (E.D.N.Y. Sept. 25, 2013) (awarding $350.00 per hour to "a first-rate trial lawyer" who was admitted to practice in 1998 and who was an experienced civil rights litigator); see generally Small v. N.Y.C. Transit Auth., No. 03 Civ. 2139 (SLT) (MDG), 2014 WL 1236619, at *5 (E.D.N.Y. Mar. 25, 2014); Garcia v. City of New York, No. 11 Civ. 2284, 2013 WL 5574507, at *4 (E.D.N.Y. Oct. 9, 2013).

Although Plaintiff's counsel correctly argues that courts have awarded higher rates to attorneys with his years of experience, those cases involved complex litigation and/or did not

involve the type of concerns described above.  See Pl. Mem. 2-3 (citing to Hassan v. New York City, No. 11 Civ. 5382 (JBW) (VMS), 2014 U.S. Dist. LEXIS 26194, *6 n.6 (E.D.N.Y. Feb. 10, 2014)); Pl. Reply Mem. 1-2 (same).  In another case more complex or carefully litigated than this one, Mr. Ofodile might well merit a higher rate.

Finally, the Court rejects Defendant's argument that any further reduction is warranted based on the small size of Mr. Ofodile's firm.  Def. Mem. 8.  Plaintiff-side civil rights firms are frequently small firms, and any per se determination that the size of such firms warrants a reduction in hourly rates would conflict with the Supreme Court's guidance that such litigation is entitled to the same hourly rates as "other types of equally complex Federal litigation."  Blum, 465 U.S. at 893 (quoting S. Rept. No. 94–1011, p. 6 (1976)).

### 2.  Mr. Ladejola-Diaba's Reasonable Hourly Rate

Mr. Ladejola-Diaba, as co-Trial Counsel, became involved in this case about a month before trial and remained involved through the last day of trial.  ECF No. 84-1; Ladejola-Diaba Decl. ¶1.  He was admitted to practice law in New York State in 2001.  Ladejola-Diaba Decl. ¶ 5.  He is an experienced litigator, and his practice has included civil rights litigation.  Id. ¶¶ 7, 9, 12; Ladejola-Diaba Supp. Decl. ¶¶ 6-7.  Mr. Ladejola-Diaba conducted the redirect examination of Plaintiff, lodged objections and participated in researching and drafting legal papers.  ECF No. 84-1; Trial Tr. 211:21-216:9, ECF No. 70.  Plaintiff requests $500.00 per hour for Mr. Ladejola-Diaba's time, based on his experience and "the difficulty and complexity of the case."  Ladejola-Diaba Decl. ¶¶ 6, 15.  Plaintiff presents no evidence that Mr. Ladejola-Diaba is considered an expert in civil rights litigation.  Additionally, Plaintiff did not cite, and the Court did not locate, any case in this Circuit awarding attorneys' fees for Mr. Ladejola-Diaba's work.

Although it was reasonable for Mr. Ofodile to obtain co-counsel for trial, Plaintiff does not offer any argument as to why it was reasonable to retain co-counsel billing at an hourly rate of $500.00, which is the equivalent to staffing this case with two partners.  See Luciano v. Olsten Corp., 109 F.3d 111, 117 (2d Cir. 1997) (affirming the district court's reduction of co-trial counsel's hours by half where co-trial counsel "questioned only one minor witness at trial"); Alt v. Greschner, No. 07 Civ. 6004 (CM) (DF), 2008 WL 5068973, at *2 (S.D.N.Y. Nov. 5, 2008) (disallowing all time billed by co-trial counsel "because there was no need for a second partner-level attorney to work on this matter, especially when the entire case was tried by [lead trial counsel] and there are associates affiliated with the firm who could have assisted at the trial"; further noting that co-trial counsel did not appear to have the same "breadth of experience" as lead trial counsel and therefore did not "merit[] the same hourly rate"); see generally N.Y.S. Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1146 (2d Cir. 1983) (decisions as to whether a prevailing party should be compensated for sending "an extra lawyer into court to observe and assist" are "best made by the district court on the basis of its own assessment of what is appropriate for the scope and complexity of the particular litigation").

The limited complexity of this case did not require two partner-level attorneys to represent Plaintiff, a fact that was demonstrated by the limited role Mr. Ladejola-Diaba played in the courtroom.  His contributions chiefly involved legal research and writing outside of court, as well as assisting Mr. Ofodile at trial while Mr. Ofodile conducted nearly all of Plaintiff's examinations and delivered the opening and closing arguments.  In other words, Mr. Ladejola-Diaba's contributions could have readily been accomplished by an experienced associate, rather than an attorney billing at a partner's rates.  Therefore, the Court finds Mr. Ladejola-Diaba's reasonable hourly rate to be $275.00, a rate appropriate for a senior associate.  This rate reflects

the work necessary in this case, not the extent of Mr. Ladejola-Diaba's legal abilities. In other circumstances he might reasonably merit a higher rate.

### C. The Reasonable Number Of Hours Expended By Plaintiff's Counsel

"[I]n reviewing a fee application, a district court should 'examine[ ] the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case,' and if it 'concludes that any expenditure of time was unreasonable, it should exclude these hours from the lodestar calculation.'" Green v. City of New York, 403 F. App'x 626, 630 (2d Cir. 2010) (quoting Luciano v. Olsten Corp., 109 F.3d 111, 116 (2d Cir. 1997)). As previously discussed, a party seeking attorneys' fees must substantiate its requested number of hours expended through contemporaneous time records. See Hensley, 461 U.S. at 437; U.S. Bank, N.A., 854 F. Supp. 2d at 287 (listing cases). "[E]xcessive, redundant, or otherwise unnecessary" hours will not be compensated. Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009) (quoting Hensley, 461 U.S. at 434). The Second Circuit has "recognized the authority of district courts 'to make across-the-board percentage cuts in hours as a practical means of trimming fat from a fee application.'" Green, 403 F. App'x at 630 (quoting In re Agent Orange Prod. Liab. Litig., 818 F.2d 226, 237 (2d Cir.1987)).

As discussed supra Section III.A, the Court calculated Mr. Ofodile's total requested hours to be 436.45 hours of legal work and 27.00 hours of travel time, and the Court concurs with Plaintiff that Mr. Ladejola-Diaba's requested hours total 209.23 hours for legal work and 8.85 hours for travel time.

Nevertheless, the Court finds numerous examples of overbilling within these recorded hours, of which the following points are provided as examples.

### 1.    Overbilling For Drafting Routine Litigation Documents

First, counsel billed unreasonably long hours for drafting routine litigation documents, especially considering counsel's many years of litigation experience.

1.    Mr. Ofodile billed 6.5 hours on preparing a Notice of Claim that is a little over two pages long.  Letter, ECF No. 32-1 (attaching the Notice of Claim); ECF No. 87 at 1 (8/18/2008 entry).

2.    Mr. Ofodile spent 1.8 hours "[c]ompleting the civil cover sheet and summons." ECF No. 87 at 2 (12/20/2010 entry).  The civil cover sheet is a two-page form. Compl., ECF No. 1-1. The summons, which was not filed on the docket, is generally a one-page document.

3.    Mr. Ofodile charged 4.7 hours on a ten-page Amended Complaint that contained only minor changes from the nine-page original Complaint, such as providing names for the John Doe officers and making minimal edits to the factual assertions. ECF No. 87 at 3 (5/4/2011 entry).

4.    Mr. Ofodile billed 28.3 hours related to preparing and drafting Plaintiff's portions of the proposed Joint Pretrial Order ("JPTO"). ECF No. 87 at 5 (3/19/2012, 3/20/2012, 3/21/2012, 6/15/2012 and 6/18/2012 entries); JPTO, ECF No. 15. Plaintiff's portion of this document was approximately three pages long and contained, in relevant part, his contact information; a description of the subject matter jurisdiction; a short description of the claims; identification of eleven prospective witnesses; a table listing Plaintiff's three trial exhibits; and a one-sentence, blanket objection to six of Defendant's exhibits.  Plaintiff asserts that the 28.3 hours expended were justified by his "exhaustive[]" examination of the case file and the time it took to "check exhibits" and "make objections to exhibits," Pl. Reply Mem. 7, but a review of the JPTO shows that this was not a 28.3-hour effort, of which 13.6 hours was devoted to drafting the document and 14.7 hours was devoted to reviewing documents.  See JPTO, ECF No. 15.

5.    Mr. Ofodile billed 31.2 hours drafting Plaintiff's jury instructions.  ECF No. 87 at 7 (3/3/2013, 3/4/2013, 3/5/3013 and 3/6/2013 entries).  Plaintiff's twenty-one requested instructions were of a routine nature and, as an experienced civil rights attorney, counsel likely has a wealth of prior jury instructions on which to rely. Proposed Jury Instructions, ECF No. 30.  For example, the first instruction, which runs six pages, is the same first instruction as Mr. Ofodile included in Khan v. HIP Centralized Laboratory Services, Inc., No. 03 Civ. 2411 (E.D.N.Y. Apr. 6, 2008) (ECF No. 119, Proposed Jury Instructions, Request No. 1).  Moreover, according to Mr. Ofodile's time records, part of his time spent on the jury instructions was for "getting charge on Williams v. McCarthy [and] adapting it."

ECF No. 87 at 11 (3/16/2013 entry). Although in many cases, jury-instruction preparation would take much longer, the submitted instructions in this case do not reflect the amount of work for which compensation is sought.

Likewise, counsel spent unreasonably long periods of time researching and drafting short legal documents.

1.  Mr. Ladejola-Diaba billed 78.88 hours researching and drafting Plaintiff's opposition to Defendants' motions in limine, a thirteen-page document with twelve case citations. ECF No. 87-1 at 1-2 (2/20/2013, 2/21/2013, 2/22/2013, 2/23/2013 and 2/25/2013 (two entries), 2/26/2013, 2/27/2013, 2/28/2013 and 3/1/2013 entries); Pl. Mot. in Limine Opp. Mem., ECF No. 27. Although not per se excessive, the hours in this case were unreasonable given that the motions in limine concerned routine issues such as bifurcation; the admission of evidence of prior lawsuits and the CCRB file; precluding evidence of Plaintiff's arrest and conviction history; and the timeliness of Plaintiffs' claims—issues that experienced litigators routinely handle. See Pl. Mot. in Limine Opp. Mem. Plaintiff raised a somewhat more detailed argument opposing the dismissal of his New York constitutional claim, but the page-and-a-half devoted to this argument does not explain the 78.88 hours billed on the opposition.

2.  Mr. Ofodile and Mr. Ladejola-Diaba expended 9.9 hours on legal research for a two-page letter with citations to four cases; that letter also concerned Plaintiff's New York constitutional claim. ECF No. 87 at 7 (3/7/2013 entry); ECF No. 87-1 at 2 (3/7/2013 entry); Tr. Br., ECF No. 38. In light of the research hours expended on the motions in limine opposition, which included this issue, the reasonableness of this time is unclear.

3.  Mr. Ofodile and Mr. Ladejola-Diaba spent 16.2 hours researching and writing a four-page brief with five case citations opposing Defendant's proposed special interrogatories. ECF No. 87-1 at 2 (3/16/2013 and 3/17/2013 entries); ECF No. 87 at 11 (3/18/2013 entry); Tr. Br., ECF. No. 50. The work product does not suggest that 16.2 hours was reasonably expended on this brief.

## 2. Overbilling For Requests For Extensions And Other Basic Legal And Administrative Tasks

Second, counsel spent unreasonable amounts of time on legal tasks of the most basic nature. For example, counsel frequently billed nearly an hour to several hours for drafting letter requests, many of which were just a few sentences long.

1.  Mr. Ofodile billed 2.2 hours for a one-page "[m]otion for extension to file Amended Complaint" that was signed by his associate, Kathy A. Polias ("Ms. Polias"). ECF No. 87 at 3 (4/29/2011 entry); Mot. for Extension of Time, ECF No. 6; see ECF No. 87 at 3 (7/13/2011 entry identifying Ms. Polias as an associate).[14]

2.  Mr. Ofodile billed 1 hour to prepare and file a two-sentence letter consenting to trial before the undersigned. ECF No. 87 at 6 (12/4/2012 entry); Consent to Jurisdiction, ECF No. 17.

3.  Mr. Ofodile billed forty-eight minutes for drafting a four-sentence request for an extension of time to respond to Defendants' motions in limine. ECF No. 85-2 at 4 (2/25/2013 entry); ECF No. 87 at 6 (2/25/2013 entry); Mot. for Extension of Time, ECF No. 24. Mr. Ladejola-Diaba billed 1.2 hours on preparing the same document. ECF No. 87-1 at 1 (2/25/2013 entry). Mr. Ofodile then billed 1.2 hours to draft a one-page letter requesting a second extension. ECF No. 87 at 6 (2/28/2013 entry); Second Mot. for Extension of Time, ECF No. 25. Mr. Ladejola-Diaba again billed 1 hour for preparing the same document. ECF No. 87-1 at 1 (2/28/2013 entry).

4.  Mr. Ofodile billed 1.8 hours on a two-page motion for an extension of time. ECF No. 87 at 13 (5/9/2013 entry); Mot. for Extension of Time, ECF No. 61.

Similarly, counsel billed unreasonably long hours preparing for telephone conferences and to review brief entries on the online docket.

1.  Mr. Ofodile billed 1.2 hours preparing for and attending a telephone conference that lasted five minutes. ECF No. 87 at 3 (5/27/2011 entry).

2.  Mr. Ladejola-Diaba spent 6.3 hours preparing for the final pre-trial conference and 3.8 hours preparing for a telephone conference, when Mr. Ofodile took the lead role in these conferences and Mr. Ladjola-Diaba billed separately for reviewing the case file when he was retained. ECF No. 87-1 at 2 (3/6/2013 and 3/8/2013 entries); see id. at 1 (2/10/2013 entry for 4.70 hours for "Reviewed case file")[15]

---

[14] Plaintiff has not requested an award for any time spent by Ms. Polias on this case. For example, Mr. Ofodile did not bill for Ms. Polias's time attending a July 25, 2011 status conference. Minute Entry, July 25, 2011, ECF.

[15] Mr. Ofodile also spent 3.3 hours preparing for the final pre-trial conference, which the Court does not find unreasonable, given his role as lead counsel. ECF No. 87 at 7 (3/7/2013 entry).

3. Mr. Ofodile frequently charged twelve to eighteen minutes to review ECF docket entries that merely informed counsel of the date of a conference or a change in the date of a conference. See, e.g., ECF No. 87 at 5-6 (10/22/2012, 10/31/2012, 11/28/2012 and 12/6/2012 entries); see also id. at 6, 13-14 (12/5/2012, 6/5/2013 and 6/12/2013 entries billing twelve minutes for reviewing ECF docket entries that were a few sentences long).

Counsel also sometimes billed for administrative tasks that should have been handled by a paralegal or billed by counsel at a paralegal's hourly rate. For example, Mr. Ofodile billed for filing documents and for creating a table of contents. ECF No. 87 at 3, 6, 11, 14, 18 (5/4/2011, 12/4/2012, 3/16/2013, 6/12/2013 and 7/29/2013 entries). He also billed for checking PACER. ECF No. 87 at 17 (7/22/2013 entry).

### 3. Overbilling Due To Counsel's Litigation Practices

Third, in several instances, counsel's litigation practices increased the hours spent on this case.

1. Mr. Ofodile billed 1.8 hours for drafting a one-page response to Defendant's motion to compel Plaintiff's deposition, a motion necessitated by Plaintiff's last-minute cancellation of his deposition and Mr. Ofodile's failure to timely respond to requests to reschedule. ECF No. 85-2 at 3 (12/18/2011 entry; as mentioned above, this entry is missing from the Reformatted Records); Mot. to Compel Pl.'s Dep., ECF No. 8; See Resp. to Mot. to Compel, ECF No. 10.

2. It might have been reasonable for Mr. Ofodile to have billed the 28.5 hours he initially spent drafting the opposition to Defendant's post-trial motion, see ECF No. 87 at 13 (5/10/2013, 5/16/2013 (two entries), 5/17/2013, 5/24/2013, 5/27/2013, 5/28/2013, 5/29/2013 and 5/30/2013 entries), except that the Court had to order Plaintiff to resubmit this opposition to address certain deficiencies, as discussed above.[16] Mr. Ofodile then spent 64.6 additional hours related to this motion. ECF No. 87 at 14-18 (6/11/2013, 6/13/2013, 6/14/ 2013, 6/20/2013 (three entries), 6/21/2013 (three entries), 7/5/2013, 7/11/2013, 7/12/2013,

---

[16] Mr. Ofodile's decision to "rely[] on his recollection of the trial testimony," Mot. to Compel, ECF No. 66, rather than provide citations to the record, resulted in more hours billed when counsel subsequently had to resubmit his briefing with citations supporting a "legally sufficient evidentiary basis" for the verdict, Fed. R. Civ. P. 50(a)(1). Furthermore, as described above, counsel misdescribed Plaintiff's trial testimony.

7/15/2013 (four entries), 7/16/2013 (two entries), 7/22/2013 (three entries), 7/24/2013, 7/26/2013, 7/27/2013 and 7/29/2013 entries). Plaintiff's legal and factual arguments did not require 93.1 hours of an experienced attorney's time.

In addition, portions of Plaintiff's opposition were devoted to procedurally deficient and/or abandoned arguments, such as a request to file a cross-motion for judgment as a matter of law, which Plaintiff then abandoned when Defendant objected that Plaintiff had failed to make a Rule 50 motion prior to the case being submitted to the jury. See Medina, 2014 WL 1010951, at **2, 18-19; Fed. R. Civ. P. 50(a)(2); see also Medina, 2014 WL 1010951, at *15 n.20 (noting that Plaintiff's erroneous argument about untimeliness ignored Rule 59(b)). Furthermore, Plaintiff submitted briefing that repeated entire paragraphs of prior briefing, which was not an effective use of counsel's or the Court's time. Compare ECF No. 76 at 1-2 with ECF No. 78 at 4-5.

3.  Mr. Ofodile billed 30.2 hours on Plaintiff's motion for attorneys' fees, a concerning amount of time given the routine nature and repetitive quality of the documents submitted,[17] as well as the many typographical and mathematical errors. ECF No. 87 at 18-19 (3/18/2014 (two entries), 4/10/2014 and 4/11/2014 entries). The submissions were not indicative of a thirty-hour effort. See Murray ex rel. Murray v. Mills, 354 F. Supp. 2d 231, 241 (E.D.N.Y. 2005) (noting that courts "in this district have found that a reasonable amount of hours to award for compiling a motion for attorneys' fees in a routine case to be 5 to 15 hours"; compiling cases).

### 4.        Overbilling Of Travel Time

Fourth, it appears that counsel overbilled for travel time, although counsel properly requests only half their usual hourly rate for this travel time. See Hugee, 852 F. Supp. 2d at 302

---

[17] Mr. Ofodile and Mr. Ladejola-Diaba's affidavits contain many identical paragraphs, and portions of Plaintiff's memorandum of law are repeated, word-for-word, in Plaintiff's reply memorandum.

Moreover, it appears that Plaintiff's counsel reasonably used portions of the attorneys' fees motion submitted in Spencer, as in the brief submitted in the present case, a heading reads "Plaintiff Spencer Is The Prevailing Party," Pl. Mem. 1 (rather than "Plaintiff Medina Is The Prevailing Party"), and several sections of the fee motions in this case and in Spencer are identical. Compare Pl. Mem. 1-5 with Spencer, No. 06 Civ. 2852 (KMW) (HBP) (S.D.N.Y. Dec. 23, 2012) (ECF No. 133 at 4-8) (memorandum of law in support of motion for attorneys' fees). The Court approves of the efficient reuse of past briefing, but such practices should result in time saved, which was not the case here.

(discounting an attorney's hourly rates by 50% when calculating fees for travel time and listing similar cases). Mr. Ofodile's office at 498 Atlantic Avenue, Brooklyn, New York, is located within close proximity to the courthouse for the Eastern District of New York: one stop on the 2/3/4/5 subway trains. Indeed, Mr. Ofodile noted that it took just 0.4 hours to travel to court when he used the subway. ECF No. 87 at 12 (3/19/2013 entry). Therefore, it was unreasonable for him to bill up to two hours to travel from his office to the courthouse. ECF No. 87 at 3-4, 7, 10-12, 14 (billing 2 hours on 3/13/2013; 1.8 hours on 3/15/2013; 1.5 hours on 3/18/2013; 1.1 hours on 3/14/2013; 0.8 hours on 3/7/2013; and 0.7 hours on 3/16/2011 (twice), 1/12/2012 (twice), 6/11/2013 and 6/13/2013); ECF No. 85-2 at 7 (1.3 hours on 3/19/2013). See Trs. of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension & Welfare Funds v. Thalle/Transit Const. Joint Venture, No. 12 Civ. 5661 (JFB) (ARL), 2014 WL 5343825, at *6 (E.D.N.Y. Oct. 20, 2014) (taking judicial notice of the travel time from Manhattan to Central Islip, and reducing excessive billing for travel time).[18]

### 5. Defendant's Arguments As To Overbilling

The Court will address Defendant's additional arguments as to overbilling. Defendant asserts that Plaintiff should not be reimbursed for counsel's time reading trial transcripts at the courthouse or for related time traveling to the courthouse to read these transcripts, as "it would have been more prudent and economical for Mr. Ofodile to have shared the cost of the transcripts with defense counsel." Def. Mem. 17. Defendant estimates that Plaintiff's counsel billed $9,775.00 for reading transcripts and related travel time, and Defendant states that it would have cost Plaintiff $2,084.40 to share the trial transcript costs with Defendant. Def. Mem. 17. Of course, Plaintiff would have expended time reading the trial transcripts whether he read them at

---

[18] To the extent Mr. Ofodile was traveling from a location other than his office, he has not made an argument as to why such travel expenses are compensable.

the courthouse or in his office; Defendant does not suggest that it would take Mr. Ofodile more time to read the transcripts at one location than the other.[19]  The pertinent comparison, therefore, is between Mr. Ofodile's travel time and the shared transcript cost.  Even at Mr. Ofodile's requested rate of $250.00 per hour for travel, his requested 4.8 hours of travel time amounts to $1,200.00, which is considerably lower than the $2,084.40 shared trial transcript cost.  See ECF No. 87 at 14-17 (6/11/2013 (two entries), 6/13/2013 (two entries), 6/18/2013 (two entries) and 7/22/2013 (two entries)).  Therefore, the Court rejects Defendant's argument for denying the transcript-related legal and travel hours in their entirety.

Additionally, Defendant argues that Plaintiff's attorneys' fees should be reduced for the partial success obtained in this case.  Def. Mem. 19-21.  Where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount."  Hensley, 461 U.S. at 436.  In Hensley, the Supreme Court provided guidance on determining the reasonable hours expended when the plaintiff had mixed success on his or her claims:

> In [some] cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.  Such a lawsuit cannot be viewed as a series of discrete claims.  Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

Hensley, 461 U.S. at 434-35; see Millea, 658 F.3d at 168 ("Hours spent on unsuccessful fee-shifting claims . . . must be excluded from the reasonable hours spent on the case when calculating the lodestar."); Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 538 (S.D.N.Y. 2008)

---

[19] That counsel should have included transcript citations in his original briefing, rather than having to spend time redoing those submissions to provide the proper support, is a separate issue.

(listing cases where fee awards were cut for motions that were never filed, abandoned claims, unreasonable motions and submissions that violated court orders).

Prior to trial, Plaintiff voluntarily dismissed his claims against Sergeant Karimzada, Officer Jackson, Officer Forbes, Officer Talavera and Officer Alban. Stipulation, ECF No. 20. At the same time, Plaintiff voluntarily dismissed his common law false arrest claims against the City, Officer Donaldson and Officer Ingrassia. Id. The jury rejected Plaintiff's federal false arrest claims; federal and state malicious prosecution claims; and excessive force claim against Officer Donaldson. Jury Verdict Sheet, ECF No. 59. The only claim on which Plaintiff prevailed was his excessive force claim against Officer Ingrassia. Id. Had Plaintiff's counsel conducted discovery, amending the Complaint to include several Defendants who were then voluntarily dismissed before trial may not have been necessary. In any event, significant time was spent on briefing and arguing fee-shifting claims, see, e.g., ECF Nos. 27, 38, that were ultimately unsuccessful. Plaintiff's lack of success as to these numerous Defendants and claims supports an across-the-board reduction, as discussed below.

### 6. The Overbilling Warrants An Across-The-Board Reduction

Given the many instances of overbilling, it is not possible to parse the billing records with any definitive accuracy. Thus, as an alternative method to calculate the appropriate and more accurate number of hours that should be compensated, the Court will utilize an across-the-board reduction to account for excessive, repetitive and otherwise unreasonable hours spent by Plaintiff's counsel on this case. See Matusick v. Erie Cnty. Water Auth., 757 F.3d 31, 64 (2d Cir. 2014) (affirming "an across-the-board 50 percent reduction based on a perceived lack of detail in the billing records"); Guardians Ass'n of Police Dep't of N.Y. v. City of New York, 133 F. App'x 785, 786 (2d Cir. 2005) (affirming a 80% reduction in hours for "excessive, redundant,

or unnecessary hours"); <u>DeMarco v. Ben Krupinski Gen. Contractor, Inc.</u>, No. 12 Civ. 0573

(SJF) (ARL), 2014 WL 3696020, at *12 (E.D.N.Y. July 22, 2014) (reducing the attorney's

requested hours by 50% for, <u>inter alia</u>, billing for administrative tasks); <u>Small</u>, 2014 WL

1236619, at *14 (reducing the requested hours by 50% due to excessive billing); <u>Romeo &</u>

<u>Juliette Laser Hair Removal, Inc. v. Assara I, LLC</u>, No. 08 Civ. 442 (TPG) (FM), 2013 WL

3322249, at *8 (S.D.N.Y. July 2, 2013) (applying a 75% reduction in the overall fee award for

excessive billing); <u>MPD Accessories, B.V. v. Urban Outfitters, Inc.</u>, No. 12 Civ. 6501 (LTS)

(KNF), 2013 WL 5761421, at *9 (S.D.N.Y. Oct. 24, 2013) (reducing the requested hours by 50%

for excessive billing), <u>objections overruled</u>, No. 12 Civ. 6501 LTS (LTS) (KNF), 2013 WL

7211833 (S.D.N.Y. Dec. 17, 2013); <u>Maldonado v. La Nueva Rampa, Inc.</u>, No. 10 Civ. 8195

(LLS) (JLC), 2012 WL 1669341, at *14 (S.D.N.Y. May 14, 2012) (reducing the requested hours

by 70% for excessive billing); <u>Pennacchio v. Powers</u>, No. 05 Civ. 985 (RRM) (RML), 2011 WL

2945825, at *2 (E.D.N.Y. July 21, 2011) (reducing the overall fee award by 60% for vagueness);

<u>Shim v. Millennium Grp.</u>, No. 08 Civ. 4022 (FB) (VVP), 2010 WL 2772493, at *7 (E.D.N.Y.

June 21, 2010) (reducing overall fee by two-thirds for overbilling), <u>report & recommendation</u>

<u>adopted,</u> No. 08 Civ. 4022 (FB) (VVP), 2010 WL 2772342 (E.D.N.Y. July 12, 2010);

<u>Suchodolski Assocs., Inc. v. Cardell Fin. Corp.</u>, No. 03 Civ. 4148 (WHP), 2008 WL 5539688, at

*3 (S.D.N.Y. Dec. 18, 2008) (reducing the requested hours by 65% for excessive billing); <u>Days</u>

<u>Inn Worldwide, Inc. v. Amar Hotels, Inc.</u>, No. 05 Civ.10100 (KMW) (KNF), 2008 WL 2485407,

at *10 (S.D.N.Y. June 18, 2008) (reducing the overall fee award by 75% for overbilling); <u>Daiwa</u>

<u>Special Asset Corp. v. Desnick</u>, No. 00 Civ. 3856 (SHS), 2002 WL 31767817, at *5 (S.D.N.Y.

Dec. 3, 2002) (reducing the overall fee award by 50% for excessive billing).

Considering the pervasiveness of the overbilling in this case, the Court, in its discretion, determines that a reduction of 55% of the total legal hours billed and 10% of the total travel hours billed is appropriate. This reduction is also supported by Plaintiff's partial success on his claims. In summary, Mr. Ofodile should be compensated for 196.40 legal hours and 24.30 hours of travel time. Mr. Ladejola-Diaba should be compensated for 94.15 legal hours and 7.97 hours of travel time.

### E.    Plaintiff's Requested Litigation Costs

In addition to hours expended, "[r]easonable out-of-pocket expenses are generally reimbursed as a matter of right in connection with an award of attorneys' fees." Hugee, 852 F. Supp. 2d at 305 (reimbursing plaintiff for filing fees, transcript costs and transportation costs for plaintiff who was required to attend a hearing). Such reimbursable costs "include filing fees, process servers, postage, travel, and photocopying," as well as legal research costs. Capone v. Patchogue-Medford Union Free Sch. Dist., No. 04 Civ. 2947 (JS) (MLO), 2011 WL 743573, at *5 (E.D.N.Y. Feb. 23, 2011). Items such as "miscellaneous supplies for trial, binders, and exhibit tabs . . . are considered non-compensable general office overhead." Barrella v. Vill. of Freeport, No. 12 Civ. 0348 (ADS) (WDW), 2014 WL 4273339, at *53 (E.D.N.Y. Aug. 28, 2014), order supplemented, No. 12 Civ. 0348 (ADS) (WDW), 2014 WL 5471055 (E.D.N.Y. Oct. 29, 2014).

In order to determine whether costs were reasonably expended, the moving party must provide some "explanation as to why the costs were necessary and some supporting documentation to show that these costs were incurred in connection with the [relevant claims]." Colon v. City of New York, No. 09 Civ. 0008 (JBW) (CLP), 2012 WL 691544, at *24 (E.D.N.Y. Feb. 9, 2012), report & recommendation adopted, No. 09 Civ. 0008, 2012 WL 686878 (E.D.N.Y.

Mar. 2, 2012). "[C]ourts either disallow or reduce the amount for expenses that are vague or unsupported by documentation." Adams v. City of New York, No. 07 Civ. 2325 (FB) (RER), 2014 WL 4649666, at *10 (E.D.N.Y. Sept. 16, 2014) (reducing travel, postage and photocopying costs by 25% "as these expenses are unsupported by receipts or sufficiently detailed records"); see Shalto v. Bay of Bengal Kabob Corp., No. 12 Civ. 920 KAM VMS, 2013 WL 867420, at *2 (E.D.N.Y. Mar. 7, 2013) (denying a request for costs in its entirety where it was unsupported by documentation); Wise v. Kelly, 620 F. Supp. 2d 435, 457 (S.D.N.Y. 2008) (holding that the defendants need only pay the plaintiff for undocumented court reporter and courier costs if the plaintiff produced invoices).

Plaintiff requests an award for the following costs, which total $1,214.00: $350.00 for the filing fee; $150.00 for service of process; $130.00 for trial witness subpoena fees ($90.00 for two days of Mr. Roberts' testimony, plus transportation, and $40.00 for Mr. Haynes's testimony); $375.00 for photocopying "CCRB transcripts of all the officers [and] Medina, [and] medical records" which totaled "1500 [pages] at .25 cents each"; $57.00 for copying and enlarging color photos for trial; and $152.00 for parking at "Manhattan Deposition and for trial."[20] ECF No. 85-1. As noted above, the Court ordered Plaintiff to file an affidavit attaching "invoices or other documents supporting the claimed costs," Order, Apr. 14, 2014, ECF, but Plaintiff did not do so, nor did counsel offer any explanation for the omission.

Thus, the only costs for which Plaintiff provided documentation were the two witness subpoena fees. ECF No. 85-3. The Court takes judicial notice that the filing fee was $350.00. Filing Fee, Dec. 10, 2010, ECF. The $150.00 process server fee is also in line with amounts

---

[20] Defendant asserts that the parking tickets referenced in Mr. Ofodile's time records should not be reimbursed. Def. Mem. 16-17. Plaintiff did not include these tickets in his requested costs. ECF No. 85-1.

awarded in this District, considering that Plaintiff initially named three defendants. Fedex Techconnect, Inc. v. Surplus R Us Inc., No. 11 Civ. 2591 (ARR) (JMA), 2011 WL 6934768, at *3 (E.D.N.Y. Dec. 9, 2011) ("Expenditures pertaining to court-imposed filing fees and process servers are routinely considered reasonable and deemed recoverable"; approving process server fees of $50.00 in a case involving one defendant), report & recommendation adopted, No. 11 Civ. 2591 (ARR) (JMA), 2011 WL 6936356 (E.D.N.Y. Dec. 30, 2011).[21]  Thus, these costs are compensable.  The filing fee, process server and witness fee costs total $630.00.

Plaintiff's photocopying and color copying costs were not properly itemized.  In his memorandum and in Mr. Ofodile's Declaration, Plaintiff includes in his photocopying costs "exhibit tabs for all the exhibits used at trial as well as for the cost of binders," Pl. Mem. 6; see Ofodile Decl. ¶ 28, items which do not appear on the Statement of Costs, ECF No. 85-1, and, in any event, are non-compensable overhead costs.  Such discrepancies call into question whether the photocopying costs are actual costs or an estimate.  Furthermore, the Court cannot assess the reasonableness of the claimed color copying and enlargement costs without knowing how many documents were involved.  Therefore, the Court finds that a 25% reduction in the requested $432.00 for photocopying and color photocopying is warranted, which results in an award of $324.00.

Likewise, absent additional information, the Court cannot assess the reasonableness of the $152.00 claimed for "Parking for Manhattan Deposition and for trial."  ECF No. 85-1.  Mr. Ofodile's time records suggest that parking during the trial cost him $9.00 per day, see ECF No. 87 at 11 (3/18/2013 entry stating "parking $9.00" on a day he was in court from 9:00 a.m. to 5:18 p.m.), which over a seven-day trial amounts to only $63.00.  Furthermore, this suggests that

---

[21] The Court notes that Plaintiff never filed the process server's affidavits of service.

parking for the "Manhattan Deposition," ECF No. 85-1, cost $89.00, an unlikely amount. Counsel is well-aware of his obligation to properly support requested costs, but he did not do so in this case. See Spencer, 2013 WL 6008240, at *9 (in a case litigated by Mr. Ofodile, reducing the requested amount for costs by 10% where complete invoices were not provided and the requested costs were not fully itemized); Hightower v. Nassau Cnty. Sheriff's Dep't, 325 F. Supp. 2d 199, 217 (E.D.N.Y. 2004) (in a case litigated by Mr. Ofodile, allowing only that portion of the requested costs that was supported by invoices), opinion vacated in part on other grounds, 343 F. Supp. 2d 191 (E.D.N.Y. 2004). Therefore, the Court finds that Plaintiff should not be compensated for the claimed parking costs.

In summary, the Court finds that Plaintiff should be reimbursed $954.00 in litigation costs.

## IV.    CONCLUSION

For the reasons discussed in this memorandum and order, Plaintiff's motion is granted in part and denied in part. The Court finds that Plaintiff, as the prevailing party, should be awarded $72,992.50 for 196.40 hours of legal work and 24.30 hours of travel time billed by Mr. Ofodile at a rate of $350.00 per hour (with travel time billed at half-rate); $26,987.13 for 94.15 hours of legal work and 7.97 hours of travel time billed by Mr. Ladejola-Diaba at a rate of $275.00 per hour (with travel time billed at half-rate); and $954.00 in costs, for a total award of $100,933.63.

**SO ORDERED.**

Dated:  Brooklyn, New York
　　　　January 6, 2015

*Vera M. Scanlon*
_____
VERA M. SCANLON
United States Magistrate Judge